IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01897-WJM-NYW

ADVANCE TRUST & LIFE ESCROW SERVICES, LTA,

    Plaintiff,

v.

SECURITY LIFE OF DENVER INSURANCE COMPANY,

    Defendant.

---

**AFFIDAVIT OF JAMES LIELL IN SUPPORT OF NON-PARTY SCOR GLOBAL LIFE AMERICAS REINSURANCE COMPANY AND NON-PARTY TRANSAMERICA LIFE'S MOTION TO QUASH SUBPOENA AND/OR MOTION FOR PROTECTIVE ORDER**

---

I, James Liell, pursuant to 28 U.S.C. 1746, declare:

1. I am in house counsel for SCOR Global Life Americas Reinsurance Company ("SCOR") in Charlotte, NC. SCOR is a U.S. based life reinsurance company that provides reinsurance to direct writing insurance companies. SCOR has reinsurance treaties (contracts) with numerous insurance companies throughout the United States, including Security Life of Denver Insurance Company ("SLD"). In my capacity as in house counsel for SCOR, I am responsible for overseeing litigation involving SCOR, including responding to third-party subpoenas and document requests. I have served in this position for SCOR for over three years.

2. I am familiar with the facts related to SCOR's and Transamerica Life Insurance Company's ("Transamerica Life's") receipt of Advance Trust & Life Escrow Services, LTA, Subpoenas to Produce Documents, Information, or Objects or To Permit Inspection of Premises in a Civil Action (the "Subpoenas") dated March 12, 2019 and submit this declaration in support of

EXHIBIT D

SCOR's and Transamerica Life's Motion to Quash Subpoenas and Motion for Protective Order.

3. SCOR purchased Transamerica Life's mortality life reinsurance business in the United States through a retrocessional arrangement, and accordingly SCOR acts as Administrator and Attorney-in-Fact for Transamerica Life in responding to this subpoena, as well as the subpoena to SCOR, (collectively referred to herein as "Subpoenas") in its Motion to Quash and/or Motion for Protective Order and this Affidavit.

4. True and correct copies of the Subpoenas are attached hereto as Exhibit A.

5. The process of drafting a reinsurance treaty between SCOR and an insurance company is a highly individualized process. A single reinsurance treaty may cover thousands of individual insurance policies issued by an insurance company, SCOR's client.

6. Plaintiff does not identify policy listings by policy number in the Subpoenas, which makes responding to the Subpoenas extremely onerous. SCOR's primary frame of reference for searching documents is provided by the reinsurance contracts and nowhere are the reinsurance contracts identified in the Subpoenas.

7. Notwithstanding the above, SCOR believes it has approximately 47 SLD treaties with 23,602 policies as of January 2019. There are 12 SLD treaties that contain the Strategic Accumulator Universal Life and Life Design Guarantee Universal Life products with approximately 4,790 total policies on those treaties. However, SCOR does not know which of those treaties include which products.

8. SCOR has no involvement in how insurance companies, such as SLD, determine the cost of insurance rates charged to their customers.

9. SCOR's reinsurance rates are typically negotiated as a percentage of a standardized

reinsurance rate table to an agreed upon formula. Further investigation would be necessary to determine how the reinsurance rates were determined here.

10. SCOR's electronic databases allow for keyboard searches of the company's electronic documents. Identifying potentially responsive document from a search query on this system would be labor intensive, as SCOR would be required to personally review all of the search term hits. This would include millions of searchable documents over a two decade time period.

11. The definition of "SLD" in the Subpoenas is "Security Life of Denver Insurance Company, its parents, agents and/or employees, persons acting on their behalf; and, the predecessors and successors in interest of each of the foregoing described entities and persons." This term potentially also encompasses affiliates of SLD and even further extends the extensively overly broad nature of the subpoena requests.

12. In addition, the electronic and physical records that would need to be searched to respond to the requests in the Subpoena may be stored in various locations across several states. Numerous of the prior hardcopy files may have been shipped to off-site storage locations. In addition, the availability of electronic data for searches specific to an employee or former employee varies depending on the custodian, his/her location, and whether he/she is still employed by SCOR. This collection of responsive materials would be a highly individualized process that would be time-consuming.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this ___th day of March, 2019.

_[signature]_

**EXHIBIT D**