# EXHIBIT 10



S 00422
305886



Received
JAN 0 7 2006
Sterling Trust Co.

### SECURITY LIFE OF DENVER INSURANCE COMPANY
#### A Stock Company

INSURED: DANIEL ████████
POLICY DATE: MAY 18, 2005
POLICY NUMBER: 1603978

**WE AGREE TO PAY** the death benefit to the beneficiary upon the death of the insured while this policy is in force.

**WE ALSO AGREE** to provide the other rights and benefits of the policy. These agreements are subject to the provisions of the policy.

#### Please Read Your Policy Carefully

**RIGHT TO EXAMINE PERIOD.** You have the right to examine and return this policy. You may return it by mail or other delivery to the agent who sold it to you or to our Customer Service Center within 30 days after you receive it. It will then be void from the beginning. Upon return of the policy, we will refund all premiums paid.

This policy is signed for Security Life of Denver Insurance Company by

_President_

_Secretary_

In this policy "you" and "your" refer to the owner of the policy. "We, "us" and "our" refer to Security Life of Denver Insurance Company.

#### This policy is a FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY.

Death benefit proceeds are payable at the insured's death.
Flexible premiums are payable until attained age 100.
This policy is nonparticipating and is not eligible for dividends.

### SECURITY LIFE OF DENVER INSURANCE COMPANY
**Home Office**
**Denver, CO**

**Customer Service Center**
P.O. Box 5065
Minot, ND 58702-5065

1165-FL-8/03

V0001165FL01

CONFIDENTIAL

ATLES_SLD000096

# TABLE OF CONTENTS

SCHEDULE ................................................................................................................................ 4

DEFINITIONS ........................................................................................................................... 5

INSURANCE COVERAGE PROVISIONS.......................................................................................... 6
    POLICY DATE.................................................................................................................. 6
    BASE DEATH BENEFIT ................................................................................................... 6
    CHANGE IN REQUESTED INSURANCE COVERAGE............................................................. 6
        Requested Increases in Coverage............................................................................. 6
        Requested Decreases in Coverage ........................................................................... 7
        Death Benefit Option Changes ................................................................................ 7
    CONTINUATION OF COVERAGE BEYOND AGE 100 .......................................................... 7
    PAYOUT OF PROCEEDS ................................................................................................... 8

PREMIUM PROVISIONS ............................................................................................................. 8
    SCHEDULED PREMIUMS................................................................................................... 9
    UNSCHEDULED PREMIUMS.............................................................................................. 9
    PREMIUM LIMITATION .................................................................................................. 9
    FAILURE TO PAY PREMIUM ............................................................................................ 9
    NET PREMIUM............................................................................................................... 9
    ACCOUNT VALUE ........................................................................................................... 9

DEDUCTIONS ........................................................................................................................... 9
    MONTHLY DEDUCTION ................................................................................................. 10
    COST OF INSURANCE .................................................................................................... 10
    ADDITIONAL INTEREST CREDITING BONUS.................................................................. 10

LOAN PROVISIONS ................................................................................................................. 10
    POLICY LOANS ............................................................................................................ 11
    LOAN INTEREST .......................................................................................................... 11

PARTIAL WITHDRAWAL PROVISIONS ...................................................................................... 11

SURRENDER PROVISIONS ....................................................................................................... 11
    BASIS OF COMPUTATIONS........................................................................................... 12
    FULL SURRENDERS ...................................................................................................... 12
    REDUCED PAID-UP COVERAGE OPTION........................................................................ 12

GRACE PERIOD, TERMINATION AND REINSTATEMENT PROVISIONS........................................... 13
    GRACE PERIOD ........................................................................................................... 13
    TERMINATION............................................................................................................. 13
    REINSTATEMENT.......................................................................................................... 13
    DEFERRAL OF PAYMENT.............................................................................................. 14

GENERAL POLICY PROVISIONS ................................................................................................ 14
    THE POLICY ................................................................................................................ 14
    CONTRACT CHANGES .................................................................................................. 14
    AGE............................................................................................................................. 14
    PROCEDURES .............................................................................................................. 14

1165-FL-8/03

2

V0001165FL02

ATLES_SLD000097

OWNERSHIP ........................................................................................... 14
BENEFICIARIES ...................................................................................... 15
EXCHANGE OPTION ............................................................................... 15
COLLATERAL ASSIGNMENT ................................................................. 16
INCONTESTABILITY ............................................................................... 16
MISSTATEMENT OF AGE OR GENDER ................................................ 16
RECLASSIFICATION OF SMOKER AND/OR TOBACCO USE STATUS ........................ 16
SUICIDE EXCLUSION ............................................................................. 16
PERIODIC REPORTS .............................................................................. 16
ILLUSTRATION OF BENEFITS AND VALUES ....................................... 17
NONPARTICIPATING ............................................................................... 17
CUSTOMER SERVICE CENTER ............................................................ 17

PAYOUTS OTHER THAN AS ONE SUM ................................................ 17
ELECTION ............................................................................................... 17
PAYOUT OPTIONS .................................................................................. 17
CHANGE AND WITHDRAWAL ................................................................ 17
EXCESS INTEREST ................................................................................ 18
MINIMUM AMOUNTS ............................................................................... 18
SUPPLEMENTARY POLICY ................................................................... 18
INCOME PROTECTION ........................................................................... 19
DEATH OF PRIMARY PAYEE ................................................................. 19
PAYMENTS OTHER THAN MONTHLY ................................................... 19

SETTLEMENT OPTION TABLES ............................................................ 20

Any supplementary amendments, endorsements or riders and a copy of the application follow the final policy provisions and are to be considered part of the Policy.

CONFIDENTIAL                                                        ATLES_SLD000098

# SCHEDULE

| | |
|---|---|
| POLICY NUMBER | 1603978 |
| POLICY DATE | MAY 18, 2005 |
| INSURED | DANIEL ▮▮▮▮▮▮▮ |
| AGE/GENDER | 75, Male |
| RATING CLASS: | Standard NonSmoker |

| | |
|---|---|
| INITIAL STATED DEATH BENEFIT | $1,500,000.00 |
| Adjustable Term Insurance Death Benefit | $1,500,000.00* |
| TOTAL TARGET DEATH BENEFIT | $3,000,000.00** |
| MINIMUM DEATH BENEFIT AMOUNT | $100,000 |

| | |
|---|---|
| DEATH BENEFIT OPTION | OPTION 1 |
| MONTHLY PROCESSING DATE | 18TH |
| SCHEDULED PREMIUM | $34,175.41, Quarterly |
| DEFINITION OF LIFE INSURANCE TEST | Guideline Premium Cash Value Corridor Test |

Coverage will expire if premiums are insufficient to continue coverage. Coverage will also be affected by partial withdrawals, policy loans and changes in the current cost of insurance rates.

*This amount is the amount of adjustable term death benefit on the policy date. This death benefit may vary from time to time, and may depend on your account value. See the rider and policy for details.
**This amount is the target death benefit on the policy date. It may change at the beginning of each policy year. See the schedule and rider for details.

Based on the guaranteed maximum cost of insurance and other charges, guaranteed minimum interest rate, scheduled premium and any rider charges, this policy expires with no value at policy year 1 .If this policy is in force on the policy anniversary nearest the insured's 100th birthday, the policy will continue as stated in the section of your policy titled Continuation of Coverage Beyond Age 100.

CUSTOMER SERVICE CENTER:          P.O. Box 5065, Minot, ND 58702-5065
                                  Toll Free Number 1-877-253-5050

1165-8/03                         4                         V00011650004

CONFIDENTIAL                                           ATLES_SLD000099

## SCHEDULE (Continued)

### SEGMENT BENEFIT PROFILE

| Segment Stated<br>Death Benefit<br>Amount | Segment<br>Effective<br>Date | Segment<br>Target<br>Premium |
|---|---|---|
| $1,500,000.00 | 05/18/2005 | $214,095.00 |

...rance Rider premium class is the same as Segment #1

...l benefit coverage. The stated death benefit shown on the schedule page at issue is
...ments may be added to the policy after issue to increase the death benefit. Each
...he policy has its own cost of insurance charges as shown in the Schedule. This is
...n of Terms section of your policy.

4A

V0001165004A

**SCHEDULE (Continued)**

**EXPENSE CHARGES**

**A.** **Premium Charge:** 4.0% of each premium.

**B.** **Sales Charge:** The sales charge is 11.0% of each premium paid each year in segment years 1 through 10, up to the segment target premium. There is no sales charge on premium above the segment target premium.

**C.** **Monthly Administrative Charges:**

**1. Per Policy Charge:**     $13 per policy month in years 1-3.
                              $3 per policy month in years 4 and thereafter.

**2. Monthly Administrative Expense Charge:**     $0.0600 per thousand of stated death benefit (or target death benefit, if greater) for years 1-5, and $0.010 thereafter. This charge only applies to the first $5,000,000 of stated or target death benefit.

**D. Refund of Sales Charge Percent (of first year premium):**

|        | Guaranteed |
|--------|-----------|
| Year 1 | 3.00% |
| Year 2 | 2.50% |
| Year 3+ | 0% |

1165-8/03                    4B                    VFUW1165004B

CONFIDENTIAL

ATLES_SLD000101

## SCHEDULE (Continued)

### POLICYHOLDER TRANSACTION CHARGES

| | |
|---|---|
| Policy Illustrations | $25 for each illustration after the 1st in a policy year. |
| Partial Withdrawal Service Fee | See below. |

### POLICY LOANS

Maximum Guaranteed Policy Loan Interest Rate

| Year | Guaranteed Maximum |
|---|---|
| 1-10 | 4.00% |
| 11+ | 3.15% |

| | |
|---|---|
| Minimum Loan Amount | $1000 |
| Maximum Loan Amount | See Loan Provisions section |

### PARTIAL WITHDRAWALS

| | |
|---|---|
| Minimum Partial Withdrawal Amount | $1000 |
| Maximum Partial Withdrawal Amount | Amount which will leave $500 as the net cash surrender value |
| Partial Withdrawal Service Fee | $25 |
| Limit on Partial Withdrawals | Twelve (12) in a policy year. |

### GUARANTEED MINIMUM INTEREST RATE          3.00% per year

Interest is credited at the guaranteed rate shown or may be credited at a higher rate. Any higher rate is guaranteed to be in effect for at least 12 months.

### ADDITIONAL INTEREST CREDITING BONUS PERCENTAGE

| | Guaranteed |
|---|---|
| Policy Year 11+ | .05% |

V0001165004C

1165-8/03                                        4C

## SCHEDULE (Continued)

The policy's base death benefit at any time will be at least equal to the account value plus the refund of sales charge, if any, times the appropriate factor from this table.

### DEFINITION OF LIFE INSURANCE
### GUIDELINE PREMIUM TEST/CASH VALUE CORRIDOR TEST
### DEATH BENEFIT FACTORS

| Insured's Attained Age | Factor | Insured's Attained Age | Factor |
|---|---|---|---|
| 15-40 | 2.50 | | |
| 41 | 2.43 | 71 | 1.13 |
| 42 | 2.36 | 72 | 1.11 |
| 43 | 2.29 | 73 | 1.09 |
| 44 | 2.22 | 74 | 1.07 |
| 45 | 2.15 | 75 | 1.05 |
| 46 | 2.09 | 76 | 1.05 |
| 47 | 2.03 | 77 | 1.05 |
| 48 | 1.97 | 78 | 1.05 |
| 49 | 1.91 | 79 | 1.05 |
| 50 | 1.85 | 80 | 1.05 |
| 51 | 1.78 | 81 | 1.05 |
| 52 | 1.71 | 82 | 1.05 |
| 53 | 1.64 | 83 | 1.05 |
| 54 | 1.57 | 84 | 1.05 |
| 55 | 1.50 | 85 | 1.05 |
| 56 | 1.46 | 86 | 1.05 |
| 57 | 1.42 | 87 | 1.05 |
| 58 | 1.38 | 88 | 1.05 |
| 59 | 1.34 | 89 | 1.05 |
| 60 | 1.30 | 90 | 1.05 |
| 61 | 1.28 | 91 | 1.04 |
| 62 | 1.26 | 92 | 1.03 |
| 63 | 1.24 | 93 | 1.02 |
| 64 | 1.22 | 94 | 1.01 |
| 65 | 1.20 | 95 | 1.00 |
| 66 | 1.19 | 96 | 1.00 |
| 67 | 1.18 | 97 | 1.00 |
| 68 | 1.17 | 98 | 1.00 |
| 69 | 1.16 | 99 | 1.00 |
| 70 | 1.15 | 100 and older | 1.00 |

CONFIDENTIAL    ATLES_SLD000103

## SCHEDULE (Continued)

### TABLE OF GUARANTEED RATES–Segment #1
Guaranteed Maximum Cost of Insurance Rates Per $1000 of Net Amount at Risk
(These rates apply to the Base Policy.)

| Attained Age | Monthly Cost of Insurance Rate | Attained Age | Monthly Cost of Insurance Rate | Attained Age | Monthly Cost of Insurance Rate |
|---|---|---|---|---|---|
| 15 | 0.11085 | 46 | 0.41017 | 77 | 6.46824 |
| 16 | 0.12585 | 47 | 0.44353 | 78 | 7.04089 |
| 17 | 0.13919 | 48 | 0.47856 | 79 | 7.64551 |
| 18 | 0.14836 | 49 | 0.51777 | 80 | 8.30507 |
| 19 | 0.15502 | 50 | 0.55948 | 81 | 9.03761 |
| 20 | 0.15836 | 51 | 0.60870 | 82 | 9.86724 |
| 21 | 0.15919 | 52 | 0.66377 | 83 | 10.80381 |
| 22 | 0.15752 | 53 | 0.72636 | 84 | 11.82571 |
| 23 | 0.15502 | 54 | 0.79730 | 85 | 12.91039 |
| 24 | 0.15169 | 55 | 0.87326 | 86 | 14.03509 |
| 25 | 0.14752 | 56 | 0.95591 | 87 | 15.18978 |
| 26 | 0.14419 | 57 | 1.04192 | 88 | 16.36948 |
| 27 | 0.14252 | 58 | 1.13378 | 89 | 17.57781 |
| 28 | 0.14169 | 59 | 1.23235 | 90 | 18.82881 |
| 29 | 0.14252 | 60 | 1.34180 | 91 | 20.14619 |
| 30 | 0.14419 | 61 | 1.46381 | 92 | 21.57655 |
| 31 | 0.14836 | 62 | 1.60173 | 93 | 23.20196 |
| 32 | 0.15252 | 63 | 1.75809 | 94 | 25.28174 |
| 33 | 0.15919 | 64 | 1.93206 | 95 | 28.27411 |
| 34 | 0.16669 | 65 | 2.12283 | 96 | 33.10676 |
| 35 | 0.17586 | 66 | 2.32623 | 97 | 41.68475 |
| 36 | 0.18670 | 67 | 2.54312 | 98 | 58.01259 |
| 37 | 0.20004 | 68 | 2.77350 | 99 | 83.33333 |
| 38 | 0.21505 | 69 | 3.02328 | | |
| 39 | 0.23255 | 70 | 3.30338 | | |
| 40 | 0.25173 | 71 | 3.62140 | | |
| 41 | 0.27424 | 72 | 3.98666 | | |
| 42 | 0.29675 | 73 | 4.40599 | | |
| 43 | 0.32260 | 74 | 4.87280 | | |
| 44 | 0.34929 | 75 | 5.37793 | | |
| 45 | 0.37931 | 76 | 5.91225 | | |

The rates shown above are for a standard premium class. If the policy is based on a special premium class (other than standard), the maximum cost of insurance rates will be adjusted using the rating factor shown in the Segment Benefit Profile of the Schedule for the special premium class. If the premium class is a stated percentage increase, the maximum cost of insurance rates will be determined by multiplying the rates for a standard rate class shown above by the rating factor shown in the Schedule. If the special premium class is a flat amount per $1,000, the maximum cost of insurance will be determined by adding the extra premium per month per $1,000 shown in the Schedule to the rate per $1,000 for the standard rate shown above. The rates shown above are based on the 1980 U.S. Commissioner's Standard Ordinary, Sex Distinct, Smoker Composite Mortality Table, age nearest birthday.

CONFIDENTIAL                                                         ATLES_SLD000104

**SCHEDULE (Continued)**

**TABLE OF GUARANTEED RATES**

Guaranteed Maximum Cost of Insurance Rates Per $1000 of Net Amount at Risk
(These rates apply to the Adjustable Term Insurance Rider.)

| Attained Age | Monthly Cost of Insurance Rate | Attained Age | Monthly Cost of Insurance Rate | Attained Age | Monthly Cost of Insurance Rate |
|---|---|---|---|---|---|
| 15 | 0.13835 | 46 | 0.51276 | 77 | 8.09839 |
| 16 | 0.15752 | 47 | 0.55447 | 78 | 8.81706 |
| 17 | 0.17420 | 48 | 0.59869 | 79 | 9.57498 |
| 18 | 0.18587 | 49 | 0.64709 | 80 | 10.40294 |
| 19 | 0.19420 | 50 | 0.69966 | 81 | 11.32260 |
| 20 | 0.19837 | 51 | 0.76141 | 82 | 12.36434 |
| 21 | 0.19921 | 52 | 0.82985 | 83 | 13.54176 |
| 22 | 0.19671 | 53 | 0.90832 | 84 | 14.82576 |
| 23 | 0.19420 | 54 | 0.99683 | 85 | 16.19045 |
| 24 | 0.19004 | 55 | 1.09202 | 86 | 17.60542 |
| 25 | 0.18420 | 56 | 1.19559 | 87 | 19.05982 |
| 26 | 0.18003 | 57 | 1.30253 | 88 | 20.54615 |
| 27 | 0.17837 | 58 | 1.41784 | 89 | 22.06903 |
| 28 | 0.17753 | 59 | 1.54070 | 90 | 23.64710 |
| 29 | 0.17837 | 60 | 1.67781 | 91 | 25.31065 |
| 30 | 0.18003 | 61 | 1.83085 | 92 | 27.11674 |
| 31 | 0.18587 | 62 | 2.00317 | 93 | 29.17188 |
| 32 | 0.19087 | 63 | 2.19899 | 94 | 31.80363 |
| 33 | 0.19921 | 64 | 2.41666 | 95 | 35.59424 |
| 34 | 0.20838 | 65 | 2.65537 | 96 | 41.72906 |
| 35 | 0.22005 | 66 | 2.90927 | 97 | 52.65466 |
| 36 | 0.23339 | 67 | 3.18092 | 98 | 73.58341 |
| 37 | 0.25006 | 68 | 3.46950 | 99 | 83.33333 |
| 38 | 0.26924 | 69 | 3.78175 | | |
| 39 | 0.29092 | 70 | 4.13284 | | |
| 40 | 0.31510 | 71 | 4.53127 | | |
| 41 | 0.34262 | 72 | 4.98809 | | |
| 42 | 0.37097 | 73 | 5.51357 | | |
| 43 | 0.40350 | 74 | 6.09863 | | |
| 44 | 0.43686 | 75 | 6.73168 | | |
| 45 | 0.47439 | 76 | 7.40104 | | |

The rates shown above are for a standard premium class. If the policy is based on a special premium class (other than standard), the maximum cost of insurance rates will be adjusted using the rating factor shown in the Segment Benefit Profile of the Schedule for the special premium class. If the premium class is a stated percentage increase, the maximum cost of insurance rates will be determined by multiplying the rates for a standard rate class shown above by the rating factor shown in the Schedule. If the special premium class is a flat amount per $1,000, the maximum cost of insurance will be determined by adding the extra premium per month per $1,000 shown in the Schedule to the rate per $1,000 for the standard rate shown above. The rates shown above are based on the 1980 U.S. Commissioner's Standard Ordinary, Sex Distinct, Smoker Composite Mortality Table, age nearest birthday.

1165-8/03

VMATR1165004F

**ADJUSTABLE TERM INSURANCE RIDER SCHEDULE**
**TABLE OF TARGET DEATH BENEFITS**

| POLICY YEAR | TARGET DEATH BENEFIT | POLICY YEAR | TARGET DEATH BENEFIT |
|---|---|---|---|
| 1 | 3,000,000.00 | | |
| 2 | 3,000,000.00 | | |
| 3 | 3,000,000.00 | | |
| 4 | 3,000,000.00 | | |
| 5 | 3,000,000.00 | | |
| 6 | 3,000,000.0 | | |
| 7 | 3,000,000.00 | | |
| 8 | 3,000,000.00 | | |
| 9 | 3,000,000.00 | | |
| 10 | 3,000,000.00 | | |
| 11 | 3,000,000.00 | | |
| 12 | 3,000,000.00 | | |
| 13 | 3,000,000.00 | | |
| 14 | 3,000,000.00 | | |
| 15 | 3,000,000.00 | | |
| 16 | 3,000,000.00 | | |
| 17 | 3,000,000.00 | | |
| 18 | 3,000,000.00 | | |
| 19 | 3,000,000.00 | | |
| 20 | 3,000,000.00 | | |
| 21 | 3,000,000.00 | | |
| 22 | 3,000,000.00 | | |
| 23 | 3,000,000.00 | | |
| 24 | 3,000,000.00 | | |
| 25 | 3,000,000.00 | | |

REFER TO YOUR RIDER FOR MORE INFORMATION.

1165-8/03

V0001165ATR01

CONFIDENTIAL

ATLES_SLD000106

## DEFINITIONS

**Account value:** Account value is the sum of net premiums paid plus credited interest; minus any partial withdrawals; and minus the monthly deductions. A monthly deduction is charged against the account value each month the policy is in force.

**Age:** The policy is issued at the age shown in the Schedule. The issue age is the insured's age on the birthday nearest the policy date.

**Base death benefit:** The base death benefit depends on the death benefit option you choose. This is defined in the Base Death Benefit provision of the policy.

**Cash surrender value:** Cash surrender value on any valuation date is the account value plus the refund of sales charge, if any.

**Customer Service Center:** The Security Life Customer Service Center is the company's office at P.O. Box 5065, Minot, ND 58702-5065. For overnight delivery, the address is 2000 21st Ave. NW, Minot, ND 58703-0890.

**Minimum death benefit:** The minimum death benefit is the stated death benefit if there is no Adjustable Term Insurance Rider attached to your policy. If there is an Adjustable Term Insurance Rider attached to your policy, the minimum death benefit is the target death benefit. The minimum death benefit is shown on the Schedule.

**Monthly Processing Date:** The date each month on which the monthly deductions from the account value are due. The first monthly processing date will be the policy date. Subsequent monthly processing dates will be the same date as the policy date each month thereafter.

**Net account value:** The amount of the account value minus any policy loan including accrued but unpaid loan interest.

**Net cash surrender value:** The amount of the cash surrender value minus any policy loan including accrued but unpaid loan interest.

**Net premium:** The premium amount paid minus the premium and sales charges, if any, shown in the Schedule. These charges are deducted from each premium before the premium is applied to your account value.

**Partial withdrawal:** The withdrawal of a portion of your net cash surrender value from the policy. The partial withdrawal may reduce the amount of base death benefit in force.

**Policy loan:** The sum of amounts you have borrowed from your policy, increased by any policy loan interest capitalized when due, and reduced by any policy loan repayments.

**Right to examine period:** The number of days after delivery during which you have the right to examine your policy and return it for a refund of premium. See the cover page for a description of your right to examine period.

**Scheduled premium:** The premium amount that you specify on the application as the amount you intend to pay at fixed intervals over a specified period of time. Premiums may be paid monthly, quarterly, semiannual, or annually, as you determine. You need not pay the scheduled premium and you may change it at any time. Also, within limits, you may pay less or more than the scheduled premium.

CONFIDENTIAL    ATLES_SLD000107

**Segment**: A segment is a block of death benefit coverage. The stated death benefit shown on the Segment Benefit Profile of the Schedule is the initial segment, or Segment #1. Each increase in the stated death benefit (other than due to an option change) is a new segment. Each new segment will be shown separately on the Segment Benefit Profile of the Schedule. The first year for a segment begins on the effective date of the segment and ends one year later. Each new segment may be subject to a new premium charge, new sales charge, new cost of insurance charges and new incontestability and suicide exclusion periods.

**Segment premium**: The actual premium received as allocated to existing segments. Premium is allocated in the same proportion that the segment target premium bears to the sum of all segment target premiums. If there is only one segment target premium, the entire premium is allocated to the segment. Segment target premium is shown in the Schedule. As each segment has unique segment years, each segment premium is associated with a segment year.

**Stated death benefit:** The sum of the segments under the policy. The stated death benefit changes when there is an increase or a decrease or when a transaction on the policy causes it to change (for example, a partial withdrawal under an Option 1 base death benefit may cause the stated death benefit to change).

**Target death benefit:** The target death benefit is the stated death benefit plus the amount of Adjustable Term Insurance Rider benefit, if any, attached to your policy. Refer to your rider for more information.

CONFIDENTIAL                                                        ATLES_SLD000108

# INSURANCE COVERAGE PROVISIONS

## POLICY DATE

The policy date shown in the Schedule is the effective date for all coverage provided in the original application. However, no insurance may take effect earlier than the date of policy delivery, unless the first scheduled premium is paid and there has been no change in the insurability of the person proposed for insurance from the date of the application for this policy to the date of policy delivery. The policy date is the date from which we measure policy years and determine the monthly processing date. Future monthly processing dates are the same calendar day of each month as the policy date, except, if the monthly processing date falls on a non-business day, then the monthly processing date is the previous business day.

## BASE DEATH BENEFIT

The base death benefit will be determined, at any time, as follows:

Option 1:  Under Option 1, the base death benefit is the greater of:
    (a)  The stated death benefit; or
    (b)  The account value plus the refund of sales charge, if any, multiplied by the appropriate factor from the Death Benefit Factors shown in the Schedule.

Option 2:  Under Option 2, the base death benefit is the greater of:
    (a)  The stated death benefit plus the account value; or
    (b)  The account value plus the refund of sales charge, if any, multiplied by the appropriate factor from the Death Benefit Factors shown in the Schedule.

Option 3:  Under Option 3, the base death benefit is the greater of:
    (a)  The stated death benefit plus premiums paid less partial withdrawals, or
    (b)  The account value, plus the refund of sales charge, if any, multiplied by the appropriate factor from the Death Benefit Factors shown in the Schedule.

The stated death benefit and the death benefit option are shown in the Schedule.

This policy is designed to qualify as a life insurance contract under the Internal Revenue Code. All terms and provisions of the policy shall be construed in a manner consistent with that design. The base death benefit in force at any time shall not be less than the amount of insurance necessary to achieve such qualification under the applicable provisions of the Internal Revenue Code in existence at the time the policy is issued. We reserve the right to amend the policy or adjust the amount of insurance when required to maintain this tax qualification. We will send you a copy of any policy amendment.

## CHANGE IN REQUESTED INSURANCE COVERAGE

You may request that the insurance coverage be increased or decreased. Decreases are not allowed before the first policy anniversary. The change in coverage may not be for an amount less than $1,000. The effective date of the change will be the monthly processing date immediately following the date your written application is approved by us. After any change to the stated death benefit, you will receive an amended Schedule reflecting the change, the benefit under any riders, if applicable, the guaranteed cost of insurance rates and the new target premium.

1165-8/03                     6                     V00011650006

CONFIDENTIAL                   ATLES_SLD000109

## Requested Increases in Coverage

Subject to our limits, you may request an increase in the stated death benefit through attained age 85. An increase will become effective as of the monthly processing date immediately following the date your written application is approved by us. You must provide evidence satisfactory to us that the insured is insurable according to our normal rules of underwriting for the applicable premium class for this type of policy. This evidence will include an application and may include required medical information. An increase will consist of a new segment of stated death benefit. Each new segment will result in a new premium charge and new sales charge which will be deducted from the premium allocated to the new segment. The new segment may also be subject to new monthly expense charges, new cost of insurance charges and new incontestability and suicide exclusion periods.

## Requested Decreases in Coverage

After the first policy anniversary, you may request a decrease in the stated death benefit. We will limit the decrease such that, immediately after the requested decrease, the stated death benefit is at least the minimum amount we require to issue this policy. The minimum amount is shown in the Schedule.

A decrease will be effective as of the monthly processing date immediately following the date your written application is approved by us. A decrease will first reduce Adjustable Term Insurance Rider coverage, if attached to your policy, and will then reduce each of the stated death benefit segments in the same proportion as the total stated death benefit is reduced.

## Death Benefit Option Changes

Beginning with the first monthly processing date and ending with the policy anniversary nearest the insured's 100th birth date, you may request to change the death benefit option. This change will be effective as of the next monthly processing date following approval. A death benefit option change applies to the entire stated death benefit. We may not allow any change if it would reduce the stated death benefit below the minimum we require to issue this policy at the time of reduction. Death benefit option changes from Option 1 to Option 3, from Option 2 to Option 3 and from Option 3 to Option 2 are not allowed. After the effective date of the change, the stated death benefit will be changed according to the following table:

| OPTION CHANGE | | |
|---|---|---|
| **FROM** | **TO** | **STATED DEATH BENEFIT FOLLOWING THE OPTION CHANGE EQUALS:** |
| Option 1 | Option 2 | Stated death benefit prior to such change minus your account value as of the effective date of the change. |
| Option 2 | Option 1 | Stated death benefit prior to such change plus your account value as of the effective date of the change. |
| Option 3 | Option 1 | Stated death benefit prior to such change plus the sum of all the premiums paid minus all partial withdrawals taken prior to the effective date of the change. |

To determine the segment stated death benefit after an option change, your account value will be allocated to each segment in the same proportion that segment bears to the total stated death benefit as of the effective date of the change.

1165-8/03                                                    7                                                    V00011650007

CONFIDENTIAL                                                                                                    ATLES_SLD000110

**CONTINUATION OF COVERAGE BEYOND AGE 100**

If the policy is in force on the policy anniversary nearest the insured's 100th birth date, the policy will continue pursuant to the terms of the policy. On this date, the following will occur:

(a) The death benefit will equal the net account value.
(b) All riders attached to the policy, if any, will terminate.

After the policy anniversary nearest the insured's 100th birth date, no further premiums will be accepted and no monthly deductions will be made. Policyholder transaction charges continue to be deducted at the time of the applicable transaction. We will continue to credit interest to the account value. Policy loans and withdrawals continue to be available. Any existing policy loan will continue. Policy loan interest will continue to accrue and if not paid, may cause your policy to lapse. Payments on policy loans and policy loan interest will be accepted. The policy will enter the 61-day grace period if the net cash surrender value is zero or less.

If you do not want coverage to continue past the policy anniversary nearest the insured's 100th birth date, the policy may be surrendered at that time, or earlier.

**PAYOUT OF PROCEEDS**

Proceeds refer to the amount we will pay:

a) Upon surrender of the policy; or
b) Upon the insured's death.

The proceeds upon surrender of this policy will be the net cash surrender value. The amount of proceeds payable upon the insured's death will be the base death benefit in effect on the date of the insured's death, plus amounts payable from any additional benefits provided by rider, minus any outstanding policy loan including accrued but unpaid interest, minus any unpaid monthly deductions incurred prior to the date of the insured's death. The calculation of the death proceeds will be computed as of the date of the insured's death.

We will determine the amount of death proceeds payable when we have received due proof of the insured's death and any other information which is necessary to process the claim. Interest will be paid at an annual rate equal to or greater than the Moody's Corporate Bond Yield-Monthly Average Corporate as of the date we receive the claim. Interest is calculated from the date we receive written proof of the death of the insured. If the method of calculating such index is substantially changed from the method of calculation in use January 1, 1993, the rate must not be less than 8%. Any proceeds we pay are subject to adjustments as provided in the Misstatement of Age or Gender, Suicide Exclusion and Incontestability provisions.

We will pay proceeds in one sum unless you request an alternate method of payment. There are many possible methods of payment. The available payout methods are described in the Payouts Other Than As One Sum provision. Contact us, or your agent, for additional information. Interest will be paid on the one sum death proceeds from the date of the insured's death to the date of payment, or until a payout option is selected. Interest will be at the rate we declare, or at any higher rate required by law.

V0001165FL08

CONFIDENTIAL                                    ATLES_SLD000111

# PREMIUM PROVISIONS

## SCHEDULED PREMIUMS

The scheduled premium as shown in the Schedule may be paid while this policy is in force prior to the policy anniversary nearest the insured's 100th birth date. You may increase or decrease the amount of the scheduled premium, subject to limits we may set and provisions in the Premium Limitation section. Under conditions provided in the Grace Period provision you may be required to make premium payments to keep the policy in force. You may pay premiums on a monthly basis through an automated payment facility.

## UNSCHEDULED PREMIUMS

You may make unscheduled premium payments at any time the policy is in force prior to the policy anniversary nearest the insured's 100th birth date, subject to the Premium Limitation section. Unless you tell us otherwise, these premium payments will first be applied to reduce or pay off any existing policy loan and, as such, neither premium charges nor sales charges will be deducted.

## PREMIUM LIMITATION

We will refund any premium that causes your policy not to qualify as a life insurance policy under the Internal Revenue Code. No premium may be paid after the death of the insured. No premium may be paid after the policy anniversary nearest the insured's 100th birth date.

## FAILURE TO PAY PREMIUM

If you stop paying premiums prior to the policy anniversary nearest the insured's 100th birth date, your coverage may lapse. See your Grace Period provision for details.

## NET PREMIUM

Net premium equals the premium paid minus the premium charge and sales charge, if any, shown in the Schedule.

Each time we receive a premium we determine the sales charge by multiplying the applicable sales charge percentage times the segment premium. There is a different sales charge percentage for the segment year in which the premium is received. Premiums allocated to a new segment will be subject to a new sales charge.

Each time we receive a premium we determine the premium charge by multiplying the applicable premium charge percentage times the segment premium.

The Schedule shows: (1) the target premium for each segment; (2) the sales charge percentage; and (3) the premium charge percentage. Segment premium is defined in the Definition of Terms section of your policy.

## ACCOUNT VALUE

The account value is based on premiums paid, premium charges and sales charges, if any policy and rider charges assessed, loans and withdrawals taken, monthly deductions, and transaction charges.

Your net account value is equal to your account value minus any policy loan and accrued but unpaid loan interest.

1165-8/03                                      9                         V00011650009

# DEDUCTIONS

**MONTHLY DEDUCTION**

The monthly deduction is equal to:
a)    The cost of insurance charges for this policy; plus
b)    The monthly charges for any additional benefits provided by riders in force under the policy; plus
c)    The per policy charge shown in the Schedule; and
d)    The monthly administrative expense charge shown in the Schedule.

After the policy anniversary nearest the insured's 100th birth date no further monthly deductions will be made.

Policyholder transaction charges, as described in the Schedule, are deducted at the time of the applicable transaction, before and after the policy anniversary nearest the insured's 100th birthdate.

**COST OF INSURANCE**

The cost of insurance for the policy is the sum of the cost of insurance for all segments.  A segment's cost of insurance is the cost of insurance rate for the premium class for the segment multiplied by the net amount at risk allocated to the segment.  It is determined on a monthly basis.

The net amount at risk is (a) minus (b) where:

a)    is the sum of (i) the base death benefit for each segment as of the monthly processing date after the monthly deductions (other than cost of insurance charges for the base death benefit and any riders), divided by (ii) the result of 1 plus the monthly equivalent of the guaranteed minimum interest rate as shown in the Schedule; and

b)    is your account value as of the monthly processing date after the monthly deductions (other than the cost of insurance charges for the base death benefit and any riders).

The net amount at risk will be allocated to a segment in the same proportion as that segment's stated death benefit bears to the sum of the stated death benefits for all segments.

The cost of insurance rate for each segment will be determined by us from time to time.  Different rates will apply to each segment. The Company will refer to the gender and age of the insured as of the effective date of segment coverage, the duration since the coverage began, the amount of target death benefit and the segment premium class in applying its current rates for each insured.  Any change in rates will apply to all individuals of the same premium class and whose policies have been in effect for the same length of time.   The rates will never exceed those rates shown in the Table of Guaranteed Rates for the segment.  These tables are in the Schedule.

**ADDITIONAL INTEREST CREDITING BONUS**

Additional interest at a rate of .05% annually will be credited to this policy once it has been in force for at least 10 policy years.  This additional interest is applicable to the non-borrowed portion of the account value and applies to the guaranteed interest rate as well.

1165-8/03                                    10                       V00011650010

                                                                     ATLES_SLD000113

## LOAN PROVISIONS

**POLICY LOANS**

You may obtain a policy loan on or after the first monthly processing date. The maximum amount you may borrow at any time equals the net cash surrender value on the date of the loan request less any outstanding policy loan including accrued but unpaid loan interest to the next policy anniversary and less all monthly deductions to the next policy anniversary, or 13 monthly deductions if you take a loan within the 30-day period before your next policy anniversary. The policy loan is a first lien on your policy. The outstanding policy loan amount is equal to the loan amount as of the beginning of the policy year plus new loans and minus loan repayments, plus accrued interest. The minimum amount you may borrow is shown in the Schedule.

**LOAN INTEREST**

The annual policy loan interest rates are shown in the Schedule. If a loan is made, interest is due and payable at the end of the policy year. Thereafter, interest on the loan amount is due annually at the end of each policy year until the loan is repaid. If interest is not paid when due, it is added to the policy loan. The portion of the account value subject to a loan may accumulate at a different rate of interest than the portion not subject to a loan.

If the policy loan amount and any accrued interest equals or exceeds the cash surrender value, a premium sufficient to keep this policy in force must be paid as provided in the Grace Period provision.

## PARTIAL WITHDRAWAL PROVISIONS

You may request a partial withdrawal from your account value on any valuation date after the first policy anniversary by writing to us at our Customer Service Center. The minimum and maximum partial withdrawal amounts are shown in the Schedule. When we process a partial withdrawal, the amount of the withdrawal plus a service fee is deducted from your account value. The amount of the service fee is shown in the Schedule. We limit the number of partial withdrawals in a policy year. This number is shown in the Schedule.

The stated death benefit is not reduced by a partial withdrawal taken when the base death benefit has been increased to qualify your policy as life insurance under the Internal Revenue Code and the amount withdrawn is not greater than that which reduces your account value to the level which no longer requires the base death benefit to be increased for Internal Revenue Code purposes. Otherwise, the stated death benefit is reduced by the amount of the partial withdrawal unless one of the following exceptions applies.

> For a policy with an Option 1 death benefit, the stated death benefit is not reduced by a partial withdrawal:
>   a) If no more than 15 years have elapsed since the policy date;
>   b) If the insured's age is not yet age 81; and
>   c) If the partial withdrawal taken is less than either the greater of 10% of your account value or 5% of the stated death benefit, calculated immediately before the partial withdrawal. Any additional amount withdrawn reduces your stated death benefit by that additional amount.

> For a policy with an Option 2 death benefit, a partial withdrawal does not reduce your stated death benefit.

1165-8/03                              11                    V00011650011

For a policy with an Option 3 death benefit, a partial withdrawal reduces your stated death benefit by any amount of the partial withdrawal in excess of premiums paid, less prior withdrawals, to the date of the partial withdrawal.

Any reduction in death benefit or account value will occur as of the date the partial withdrawal occurs.

We will limit the amount of the partial withdrawal such that, immediately after the requested withdrawal, the death benefit is at least the minimum death benefit we require to issue this policy. The minimum amount is shown in the Schedule.

We will send you a new Schedule to reflect the effect of the withdrawal if there is any change to the stated death benefit. We may ask you to return your policy to our Customer Service Center to make this change. The withdrawal and the reductions in death benefits will be effective as of the monthly processing date after we receive your request.

## SURRENDER PROVISIONS

### BASIS OF COMPUTATIONS

The cash surrender value under the policy is not less than the minimums required under the Standard Non-forfeiture Laws as of the policy date by the state in which your policy was delivered. A detailed statement of the method of computation of policy values under the policy using the 1980 Commissioner's Standard Ordinary, Sex Distinct, Smoker Composite Mortality Table, on an age nearest basis, has been filed with the insurance department of the state in which the policy was delivered, if required.

### FULL SURRENDERS

You may surrender your policy after the right to examine period or at any time before the death of the insured and receive the net cash surrender value. We will compute the net cash surrender value as of the next monthly processing date after we receive both your request and the policy at our Customer Service Center. This policy will be canceled as of the date we receive your request, and there will be no further benefits under this policy. Once you surrender this policy, it cannot be reinstated. Interest will be paid on the surrender amount if we do not send you your surrender proceeds within 30 days of receipt of the policy form and the request for cash surrender. Interest will be paid at an annual rate equal to or greater than the Moody's Corporate Bond Yield-Monthly Average Corporate as of the date we receive your request for surrender and the policy form at our Customer Service Center. Interest is calculated from the date we receive the policy form and your written request to surrender. If the method of calculating such index is substantially changed from the method of calculation in use January 1, 1981, the interest rate index shall be the index approved by rule promulgated by the Florida department. Any proceeds we pay are subject to adjustments as provided in the Misstatement of Age or Gender, Suicide Exclusion and Incontestability provisions.

If you surrender your policy within the first two policy years and after the Right to Examine Policy Period has ended, the net cash surrender value may include a refund of a portion of the sales charge which was previously deducted from your first year premium paid. When first year premium is received from another Security Life of Denver Insurance Company policy in order to fund this policy, there is no refund of the sales charge. When this policy is surrendered as part of a Section 1035 exchange to another insurer, there is no refund of the sales charge. The guaranteed refund of sales charge percentage is shown in the Schedule. This percent may be at a higher rate but will never be less than the guaranteed percent shown in the Schedule.

1165-FL-8/03                                    12                          V0001165FL12

**REDUCED PAID-UP COVERAGE OPTION**

After the first policy year, you may choose to have this policy replaced with a new policy with the death benefit reduced to a paid-up non-forfeiture amount. This reduced paid-up benefit amount will be calculated by using the policy's net cash surrender value on the date of electing this option as a net single premium. The benefit calculation will use guaranteed deductions, an annual interest rate of 4.5%, and the attained age of the insured. No further premiums will be payable on the new paid-up policy. If there are any riders on the current policy, they will terminate if this option is elected.

## GRACE PERIOD, TERMINATION AND REINSTATEMENT PROVISIONS

### GRACE PERIOD

On a monthly processing date, if the net account value is zero or less, the policy will enter into a 61-day grace period.

During the grace period you must make the required premium payment then due to keep the policy in force. If this amount is not received in full by the end of the grace period, the policy will lapse without value. The required premium payment will be equal to past due charges plus an amount we expect to be sufficient to keep the policy and any riders in force for 2 months following receipt of the required premium payment. If we receive at least the required premium payment during the grace period, we will apply the net premium payment to the policy and make deductions for the past due amounts.

Notice of the amount of the required premium payment will be mailed to you and any assignee at the last known address at least 30 days before the end of the grace period.

If the death of the insured occurs during the grace period, we will deduct any overdue monthly charges from the death proceeds of the policy.

### TERMINATION

All coverage provided by this policy will end as of the earliest of:

a) The date the policy is surrendered;
b) The date of the insured's death; or
c) The date the grace period ends without payment of the required premium.

### REINSTATEMENT

The policy and its riders may be reinstated within five years after the beginning of the grace period. The reinstatement will be effective as of the monthly processing date on or next following the date we approve your written application for reinstatement.

We will reinstate the policy and any riders if the following conditions are met:

a) You have not surrendered the policy for its net cash surrender value;
b) You submit evidence satisfactory to us that the insured, and those insured under any riders, is still insurable according to our normal rules of underwriting for the applicable underwriting class for this type of policy; and
c) We receive payment of the amount of premium sufficient to keep the policy and any riders in force from the beginning of the grace period to the end of the expired grace period and for 2 months after the date of reinstatement. We will let you know at the time you request reinstatement, the amount of premium needed for this purpose.

We will reinstate any policy loan, with accrued loan interest to the end of the Grace Period, which existed when coverage ended.

1165-FL-8/03                          13                          V0001165FL13

**DEFERRAL OF PAYMENT**

We may defer for up to 6 months payment of any surrender proceeds, partial withdrawals or loans. Death proceeds will be paid promptly upon receipt of due proof of death.

## GENERAL POLICY PROVISIONS

**THE POLICY**

The policy, including the original application and applications for any increases, decreases, riders, endorsements, any Schedule pages, and any reinstatement applications make up the entire contract between you and us. A copy of the original application will be attached to the policy at issue or at delivery. A copy of any application as well as a new Schedule will be attached or furnished to you for attachment to the policy at the time of any change in coverage. In the absence of fraud, all statements made in any application will be considered representations and not warranties. No statement will be used to deny a claim unless it is in an application.

**CONTRACT CHANGES**

All changes made by us must be signed by our president or an officer and by our secretary or assistant secretary. No other persons can change any of this policy's terms and conditions.

**AGE**

The policy is issued at the age shown in the Schedule. The issue age is the insured's age on the birthday nearest the policy date. The insured's age at any time is the age shown in the Schedule increased by the number of completed policy years.

**PROCEDURES**

We must receive any election, designation, assignment or any other change request you make in writing, except those specified on the application. It must be in a form acceptable to us. We may require a return of the policy for any change or for a full surrender. We are not liable for any action we take before we receive and record the written request at our Customer Service Center.

In the event of the death of the insured, please let us or our agent know as soon as possible. Upon notification to us or our agent, instructions will promptly be sent to you or the beneficiary. We may require proof of age and a certified copy of the death certificate. We may require the beneficiary and next of kin sign authorizations as part of due proof. These authorization forms allow us to obtain information about the decedent, including, but not limited to, medical records of physicians and hospitals used by the decedent. Settlement will be made upon receipt of due proof of death.

**OWNERSHIP**

The original owner is the person or entity named as the owner in the application. You, as the owner, can exercise all rights and receive the benefits until the insured's death. This includes the right to change the owner, beneficiaries, and methods for the payment of proceeds. All rights of the owner are subject to the rights of any assignee and any irrevocable beneficiary.

You may name a new owner by sending written notice to us. The effective date of the change to the new owner will be the date you sign the notice. The change will not affect any payment made or action taken by us before we record the change at our Customer Service Center.

1165-8/03                                     14                         V00011650014

**BENEFICIARIES**

The primary beneficiary surviving the insured's death will receive any death proceeds which become payable. Surviving contingent beneficiaries are paid death proceeds only if no primary beneficiary has survived the insured's death. If more than one beneficiary in a class survives the insured's death, they will share the death proceeds equally, unless your designation provides otherwise. If there is no designated beneficiary surviving, you or your estate will be paid the death proceeds. The beneficiary designation will be on file with us or at a location designated by us. Until the insured's death, you may name a new beneficiary. The effective date of the change will be the date the request was signed. We will pay proceeds to the most recent beneficiary designation on file. We will not be subject to multiple payments.

**EXCHANGE OPTION**

This option allows you to convert this policy to a flexible premium adjustable variable life insurance policy which is acceptable to us at the time of conversion. The requirements of the option are:

1. If the conversion is prior to the 10th policy anniversary;
   a) Evidence of insurability will not be required.
   b) If the conversion is before the 5th policy anniversary, the new policy will be in the same rate class, if available at the time of conversion, otherwise, a comparable rate class available at the time of conversion.
   c) If the conversion is after the 5th policy anniversary but prior to the 10th policy anniversary,
      i) the new policy will be in the rate class applicable to standard risk (or rated risk, if this policy is so rated) at the time of conversion. However, if evidence of insurability satisfactory to us is submitted, the new policy will be in the same rate class, if available at the time of conversion, otherwise a comparable rate class available at the time of conversion.
   d) After this policy has been in force for two years, the suicide and incontestability periods will not start anew in any new policy which is issued pursuant to the exercising of this option without evidence of insurability, except for either or both of the following conditions:
      i) The new policy contains new benefits not contained in this policy; or
      ii) There is an increase in the death benefit of the new policy.
2. If the conversion is after the 10th policy anniversary, evidence of insurability satisfactory to us must be submitted.
3. If evidence of insurability is submitted:
   a) We will have the right to require an examination of the insured by a physician chosen by us. Such examination will be at our expense.
   b) The suicide and contestability periods of the new policy will be measured from the issue date of the new policy.
4. The stated death benefit amount of the new policy must have the same stated death benefit amount as this policy and the target death benefit (if new policy has an Adjustable Term Insurance Rider) may be no larger than the target death benefit amount of this policy to qualify for conversion without evidence of insurability as described above.
5. The stated death benefit amount of the new policy may not be less than the minimum required for the plan selected. At least one plan will always be available in an amount to which this policy may be converted.
6. The policy cost factors for the new policy will be based on rates in effect for the age, gender of the insured as well as the rate class determined as described in this section at the time of conversion.
7. The new policy will have a policy date and issue age corresponding to the effective date of the conversion.
8. Any riders attached to this policy may be applied for if available on the newly issued policy on the conversion date.
9. The policy may not be in the Grace Period.
10. Upon conversion, the surrender fee if any, will be waived up to the amount of the surrender charge of the new policy.

**COLLAT**

You may
rights of
the assig

**INCONT**

After this
contest t

After this
segment
in the ap

After this
reinstate

**MISSTA**

If the ins
Incontes
deducte
would h

**RECLA**

If there
force, y
request
issue d
our gen
other th
examin
may al
CONTE

**SUICIE**

If the ir
limited
that tir
withdra

If the i
segmei
new se
monthl

1165-8

1165-8/03                                    15                    V00011650015

## COLLATERAL ASSIGNMENT

You may assign this policy as collateral security by written notice to us. Once it is recorded with us, the rights of the owner and beneficiary are subject to the assignment. It is your responsibility to make sure the assignment is valid.

## INCONTESTABILITY

After this policy has been in force while the insured is alive for 2 years from the policy date, we will not contest the statements in the application attached at issue.

After this policy has been in force while the insured is alive for 2 years from the effective date of any new segment or from the effective date of an increase in any other benefit, we will not contest the statements in the application for the new segment or other increase.

After this policy has been in force while the insured is alive for 2 years from the effective date of any reinstatement, we will not contest the statements in the application for such reinstatement.

## MISSTATEMENT OF AGE OR GENDER

If the insured's age or gender has been misstated, the death benefit will be adjusted. Notwithstanding the Incontestability provision above, the death benefit will be that which the cost of insurance, which was deducted from your account value on the last monthly processing date prior to the death of the insured, would have purchased for the insured's correct age and gender.

## RECLASSIFICATION OF SMOKER AND/OR TOBACCO USE STATUS

If there is a change in the insured's smoking and/or tobacco use habits during the time this policy is in force, you may apply for a reclassification of the insured's premium rate class by sending a written request to us at our Home Office. This policy must have been in force for one year from the earlier of its issue date or policy date before any such request may be made. Any reclassification will be based upon our general underwriting rules in effect at the time your request is submitted, and may include criteria other than smoking and/or tobacco use status. The insured may be required to undergo a new medical examination prior to any such reclassification. Our definitions of smoker and/or tobacco use at that time may also be different than our definitions at the time this policy was issued. This policy's CONTESTABILITY and SUICIDE provisions will not begin again upon the insured's reclassification.

## SUICIDE EXCLUSION

If the insured commits suicide, while sane or insane, within 2 years of the policy date, we will make a limited payment to the beneficiary. We will pay in one sum the amount of all premiums paid to us during that time, minus any outstanding policy loan (including accrued but unpaid interest) and partial withdrawals. Coverage under the policy and all riders will then terminate.

If the insured commits suicide, while sane or insane, within 2 years of the effective date of a new segment or of an increase in any other benefit, we will make a limited payment to the beneficiary for the new segment or other increase. This payment will equal the cost of insurance and any applicable monthly expense charges deducted for such increase. Coverage under that segment will then terminate.

CONFIDENTIAL                                                                    ATLES_SLD000119

### PERIODIC REPORTS

We will send you, without charge, at least once each year a report that shows the current account value, net cash surrender value and premiums paid since the last report. The report will include any other information that may be currently required by the insurance supervisory official of the jurisdiction in which this policy is delivered.

### ILLUSTRATION OF BENEFITS AND VALUES

We will send you, without charge, upon written request, a hypothetical illustration of future death benefits and account values. This illustration will include the information as required by the laws or regulations where this policy is delivered. If you request more than one illustration during a policy year, we reserve the right to charge a reasonable fee for each additional illustration. The maximum amount of this fee is shown in the Schedule.

### NONPARTICIPATING

The policy does not participate in our surplus earnings.

### CUSTOMER SERVICE CENTER

Our Customer Service Center is at the address shown in the Schedule. Unless otherwise provided in this policy or you are otherwise notified:

    a)  All requests and payments should be sent to us at our Customer Service Center; and
    b)  All transactions are effective as of the date the required information is received at our Customer Service Center.

## PAYOUTS OTHER THAN AS ONE SUM

### ELECTION

Before the insured's death, you may elect to have the beneficiary receive the proceeds other than in one sum. If you have not made an election, the beneficiary may do so within 60 days after we receive due proof satisfactory to us of the insured's death. You may also elect to take the net cash surrender value of the policy upon its surrender other than in one sum. A satisfactory written request must be received at our Customer Service Center before payment can be made. A payee that is not a natural person may not be named without our consent. The various methods of settlement are described in the following Payout Options section.

### PAYOUT OPTIONS

    **OPTION I. Payouts for a Designated Period.** Payouts will be made in annual, semi-annual, quarterly or monthly installments per year as elected for a designated period, which may be 5 to 30 years. The installment dollar amounts will be equal except for any excess interest as described below. The amount of the first monthly payout for each $1,000 of account value applied is shown in Settlement Option Table I.

1165-FL-8/03                    17               V0001165FL17

CONFIDENTIAL                                                                                                                    ATLES_SLD000120

**OPTION II. Life Income With Payouts for a Designated Period.** Payouts will be made in annual, semi-annual, quarterly or monthly installments per year throughout the payee's lifetime, or if longer, for a period of 5, 10, 15 or 20 years as elected. The installment dollar amounts will be equal except for any excess interest as described below. The amount of the first monthly payout for each $1,000 of account value applied is shown in Settlement Option Table II. This option is available only for ages shown in the table.

Payouts for Payout Option II will be determined by using the 1983 Individual Annuity Mortality Table for the appropriate gender at 3 ½% interest.

**OPTION III. Hold at Interest.** Amounts may be left on deposit with us to be paid upon the death of the payee or at any earlier date elected. Interest on any unpaid balance will be at the rate declared by us or at any higher rate required by law. Interest may be accumulated or paid in 1, 2, 4, or 12 installments per year, as elected. Money may not be left on deposit for more than 30 years.

**OPTION IV. Payouts of a Designated Amount.** Payouts will be made until proceeds, together with interest which will be at the rate declared by us or at any higher rate required by law, are exhausted. Payouts will be made in annual, semi-annual, quarterly or monthly equal installments per year, as elected.

**OPTION V. Other.** Settlement may be made in any other manner as agreed upon in writing between you (or the beneficiary) and us.

## CHANGE AND WITHDRAWAL

You may change any payout election at any time before the insured's death. If you have given the beneficiary the right to make changes or withdrawals, or if the beneficiary has elected the option, the beneficiary (as primary payee) may take the actions below.

a) Changes may be made from Payout Options I, III, and IV to another option.
b) Full withdrawals may be made under Payout Option III or IV. Partial withdrawals of not less than $300 may be made under Payout Option III.
c) Remaining installments under Payout Option I may be commuted at 3½% interest and received in one sum.
d) Changes in any contingent payee designation may be made.

A written request must be sent to our Customer Service Center in writing to make a change or withdrawal. We also may require that you send in the supplementary policy. We may defer payment of commuted and withdrawable amounts for a period up to 6 months.

## EXCESS INTEREST

If we declare that Payout Options are to be credited with an interest rate above that guaranteed, it will apply to Payout Options I, II, III, and IV. The crediting of excess interest for one period does not guarantee the higher rate for other periods.

## MINIMUM AMOUNTS

The minimum amount which may be applied under any option is $2,000. If the payments to the payee are ever less than $20, we may change the frequency of payments so as to result in payments of at least that amount.

V00011650018

1165-8/03                                    18

## SUPPLEMENTARY POLICY

When a payout option becomes effective, the policy will be surrendered in exchange for a supplementary policy. It will provide for the manner of settlement and rights of the payees. The supplementary policy's effective date will be the date of the insured's death or the date of other settlement. The first payment under Options I, II, and IV will be payable as of the effective date. The first interest payment under Option III will be made as of the end of the interest payment period elected. Subsequent payments will be made in accordance with the frequency of payment elected. The supplementary policy may not be assigned or payments made to another without our consent.

## INCOME PROTECTION

Unless otherwise provided in the election, a payee does not have the right to commute, transfer or encumber amounts held or installments to become payable. To the extent provided by law, the proceeds, amount retained, and installments are not subject to any payee's debts, policies, or engagements.

## DEATH OF PRIMARY PAYEE

Upon the primary payee's death, any payments certain under Option I or II, interest payments under Option III, or payments under Option IV will be continued to the contingent payee; or, amounts may be released in one sum if permitted by the policy. The final payee will be the estate of the last to die of the primary payee and any contingent payee.

## PAYMENTS OTHER THAN MONTHLY

The tables that follow show monthly installments for Options I and II. To arrive at annual, semiannual, or quarterly payments, multiply the appropriate figures by 11.813, 5.957 or 2.991 respectively. Factors for other periods certain or for other options that may be provided by mutual agreement will be provided upon reasonable request.

V00011650019

1165-8/03                    19

ATLES_SLD000122

## SETTLEMENT OPTION TABLES

## SETTLEMENT OPTION TABLE I

(Per $1,000 of Net Proceeds)

| No. of Years Payable | Monthly Installments | No. of Years Payable | Monthly Installments |
|---|---|---|---|
| 1 | $84.65 | 16 | 6.76 |
| 2 | 43.05 | 17 | 6.47 |
| 3 | 29.19 | 18 | 6.20 |
| 4 | 22.27 | 19 | 5.97 |
| 5 | 18.12 | 20 | 5.75 |
| 6 | 15.35 | 21 | 5.56 |
| 7 | 13.38 | 22 | 5.39 |
| 8 | 11.90 | 23 | 5.24 |
| 9 | 10.75 | 24 | 5.09 |
| 10 | 9.83 | 25 | 4.96 |
| 11 | 9.09 | 26 | 4.84 |
| 12 | 8.46 | 27 | 4.73 |
| 13 | 7.94 | 28 | 4.63 |
| 14 | 7.49 | 29 | 4.53 |
| 15 | 7.10 | 30 | 4.45 |

CONFIDENTIAL                                    ATLES_SLD000123

## SETTLEMENT OPTION TABLE II
### Female

( Per $1,000 of Net Proceeds)

| Age of Payee Nearest Birth date When First Installment is Payable | Monthly Installment | | | | Age of Payee Nearest Birth date When First Installment is Payable | Monthly Installment | | | |
|---|---|---|---|---|---|---|---|---|---|
| Female | Life With 5 Years Certain | Life With 10 Years Certain | Life With 15 Years Certain | Life With 20 Years Certain | Female | Life With 5 Years Certain | Life With 10 Years Certain | Life With 15 Years Certain | Life With 20 Years Certain |
| 15 | 3.19 | 3.19 | 3.19 | 3.19 | 41 | 3.76 | 3.76 | 3.75 | 3.73 |
| 16 | 3.20 | 3.20 | 3.20 | 3.20 | 42 | 3.80 | 3.80 | 3.78 | 3.77 |
| 17 | 3.22 | 3.22 | 3.21 | 3.21 | 43 | 3.84 | 3.84 | 3.82 | 3.81 |
| 18 | 3.23 | 3.23 | 3.23 | 3.23 | 44 | 3.88 | 3.88 | 3.86 | 3.84 |
| 19 | 3.24 | 3.24 | 3.24 | 3.24 | 45 | 3.93 | 3.92 | 3.91 | 3.88 |
| 20 | 3.26 | 3.26 | 3.26 | 3.25 | 46 | 3.98 | 3.97 | 3.95 | 3.92 |
| 21 | 3.27 | 3.27 | 3.27 | 3.27 | 47 | 4.03 | 4.02 | 4.00 | 3.97 |
| 22 | 3.29 | 3.29 | 3.29 | 3.28 | 48 | 4.08 | 4.07 | 4.05 | 4.01 |
| 23 | 3.31 | 3.30 | 3.30 | 3.30 | 49 | 4.13 | 4.12 | 4.10 | 4.06 |
| 24 | 3.32 | 3.32 | 3.32 | 3.32 | 50 | 4.19 | 4.18 | 4.15 | 4.11 |
| 25 | 3.34 | 3.34 | 3.34 | 3.33 | 51 | 4.25 | 4.24 | 4.21 | 4.16 |
| 26 | 3.36 | 3.36 | 3.35 | 3.35 | 52 | 4.32 | 4.30 | 4.26 | 4.21 |
| 27 | 3.38 | 3.38 | 3.37 | 3.37 | 53 | 4.38 | 4.36 | 4.33 | 4.27 |
| 28 | 3.40 | 3.40 | 3.39 | 3.39 | 54 | 4.46 | 4.43 | 4.39 | 4.32 |
| 29 | 3.42 | 3.42 | 3.41 | 3.41 | 55 | 4.53 | 4.51 | 4.46 | 4.38 |
| 30 | 3.44 | 3.44 | 3.43 | 3.43 | 56 | 4.61 | 4.58 | 4.53 | 4.44 |
| 31 | 3.46 | 3.46 | 3.46 | 3.45 | 57 | 4.70 | 4.66 | 4.60 | 4.51 |
| 32 | 3.49 | 3.48 | 3.48 | 3.48 | 58 | 4.79 | 4.75 | 4.68 | 4.57 |
| 33 | 3.51 | 3.51 | 3.51 | 3.50 | 59 | 4.88 | 4.84 | 4.76 | 4.64 |
| 34 | 3.54 | 3.54 | 3.53 | 3.52 | 60 | 4.99 | 4.93 | 4.84 | 4.70 |
| 35 | 3.57 | 3.56 | 3.56 | 3.55 | 61 | 5.09 | 5.03 | 4.93 | 4.77 |
| 36 | 3.60 | 3.59 | 3.59 | 3.58 | 62 | 5.21 | 5.14 | 5.02 | 4.84 |
| 37 | 3.63 | 3.62 | 3.62 | 3.61 | 63 | 5.33 | 5.25 | 5.12 | 4.91 |
| 38 | 3.66 | 3.65 | 3.65 | 3.64 | 64 | 5.46 | 5.37 | 5.21 | 4.98 |
| 39 | 3.69 | 3.69 | 3.68 | 3.67 | 65 | 5.60 | 5.50 | 5.31 | 5.05 |
| 40 | 3.73 | 3.72 | 3.71 | 3.70 | 66 | 5.75 | 5.63 | 5.42 | 5.12 |

V00011650021

1165-8/03

CONFIDENTIAL

ATLES_SLD000124

## SETTLEMENT OPTION TABLE II/Female
### (Continued)

| (Per $1,000 of Net Proceeds) | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Age of Payee Nearest Birth date When First Installment is Payable | | Monthly Installment | | | | Age of Payee Nearest Birth date When First Installment is Payable | Monthly Installment | | | |
| Life With 20 Years Certain | Female | Life With 5 Years Certain | Life With 10 Years Certain | Life With 15 Years Certain | Life With 20 Years Certain | Female | Life With 5 Years Certain | Life With 10 Years Certain | Life With 15 Years Certain | Life With 20 Years Certain |
| 3.73 | 67 | 5.91 | 5.77 | 5.53 | 5.19 | 92 | 14.45 | 9.61 | 7.09 | 5.75 |
| 3.77 | 68 | 6.08 | 5.91 | 5.63 | 5.25 | 93 | 14.81 | 9.66 | 7.10 | 5.75 |
| 3.81 | 69 | 6.26 | 6.07 | 5.74 | 5.32 | 94 | 15.16 | 9.70 | 7.10 | 5.75 |
| 3.84 | 70 | 6.46 | 6.23 | 5.86 | 5.37 | 95 | 15.49 | 9.73 | 7.10 | 5.75 |
| 3.88 | 71 | 6.67 | 6.40 | 5.97 | 5.43 | 96 | 15.80 | 9.76 | 7.10 | |
| 3.92 | 72 | 6.89 | 6.58 | 6.08 | 5.48 | 97 | 16.11 | 9.79 | 7.10 | |
| 3.97 | 73 | 7.13 | 6.76 | 6.18 | 5.52 | 98 | 16.40 | 9.80 | 7.10 | |
| 4.01 | 74 | 7.39 | 6.95 | 6.29 | 5.57 | 99 | 16.68 | 9.82 | 7.10 | |
| 4.06 | 75 | 7.67 | 7.14 | 6.39 | 5.60 | 100 | 16.95 | 9.82 | 7.10 | |
| 4.11 | 76 | 7.96 | 7.34 | 6.48 | 5.63 | 101 | 17.20 | 9.83 | | |
| 4.16 | 77 | 8.28 | 7.54 | 6.57 | 5.66 | 102 | 17.43 | 9.83 | | |
| 4.21 | 78 | 8.61 | 7.74 | 6.65 | 5.68 | 103 | 17.62 | 9.83 | | |
| 4.27 | 79 | 8.97 | 7.94 | 6.72 | 5.70 | 104 | 17.78 | 9.83 | | |
| 4.32 | 80 | 9.34 | 8.13 | 6.79 | 5.71 | 105 | 17.91 | 9.83 | | |
| 4.38 | 81 | 9.73 | 8.32 | 6.84 | 5.72 | 106 | 18.00 | | | |
| 4.44 | 82 | 10.14 | 8.50 | 6.89 | 5.73 | 107 | 18.06 | | | |
| 4.51 | 83 | 10.57 | 8.67 | 6.94 | 5.74 | 108 | 18.09 | | | |
| 4.57 | 84 | 11.01 | 8.83 | 6.97 | 5.74 | 109 | 18.11 | | | |
| 4.64 | 85 | 11.46 | 8.97 | 7.00 | 5.75 | 110 | 18.11 | | | |
| 4.70 | 86 | 11.91 | 9.10 | 7.02 | 5.75 | | | | | |
| 4.77 | 87 | 12.36 | 9.22 | 7.04 | 5.75 | | | | | |
| 4.84 | 88 | 12.81 | 9.32 | 7.06 | 5.75 | | | | | |
| 4.91 | 89 | 13.25 | 9.41 | 7.07 | 5.75 | | | | | |
| 4.98 | 90 | 13.67 | 9.48 | 7.08 | 5.75 | | | | | |
| 5.05 | 91 | 14.07 | 9.55 | 7.09 | 5.75 | | | | | |
| 5.12 | | | | | | | | | | |

V00011650022

CONFIDENTIAL                                        ATLES_SLD000125

## SETTLEMENT OPTION TABLE II
### Male

| ( Per $1,000 of Net Proceeds) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age of Payee Nearest Birth date When First Installment is Payable | Monthly Installment | | | | Age of Payee Nearest Birth date When First Installment is Payable | Monthly Installment | | | |
| Male | Life With 5 Years Certain | Life With 10 Years Certain | Life With 15 Years Certain | Life With 20 Years Certain | Male | Life With 5 Years Certain | Life With 10 Years Certain | Life With 15 Years Certain | Life With 20 Years Certain |
| 15 | 3.28 | 3.28 | 3.27 | 3.27 | 41 | 4.01 | 4.00 | 3.97 | 3.94 |
| 16 | 3.29 | 3.29 | 3.29 | 3.28 | 42 | 4.06 | 4.04 | 4.01 | 3.98 |
| 17 | 3.31 | 3.31 | 3.30 | 3.30 | 43 | 4.11 | 4.09 | 4.06 | 4.02 |
| 18 | 3.32 | 3.32 | 3.32 | 3.32 | 44 | 4.16 | 4.14 | 4.11 | 4.06 |
| 19 | 3.34 | 3.34 | 3.34 | 3.33 | 45 | 4.22 | 4.20 | 4.16 | 4.11 |
| 20 | 3.36 | 3.36 | 3.35 | 3.35 | 46 | 4.28 | 4.25 | 4.21 | 4.16 |
| 21 | 3.38 | 3.38 | 3.37 | 3.37 | 47 | 4.34 | 4.31 | 4.27 | 4.21 |
| 22 | 3.40 | 3.40 | 3.39 | 3.39 | 48 | 4.41 | 4.38 | 4.33 | 4.26 |
| 23 | 3.42 | 3.42 | 3.41 | 3.41 | 49 | 4.48 | 4.44 | 4.39 | 4.31 |
| 24 | 3.44 | 3.44 | 3.43 | 3.43 | 50 | 4.55 | 4.51 | 4.45 | 4.36 |
| 25 | 3.46 | 3.46 | 3.45 | 3.45 | 51 | 4.62 | 4.58 | 4.52 | 4.42 |
| 26 | 3.49 | 3.48 | 3.48 | 3.47 | 52 | 4.70 | 4.66 | 4.58 | 4.48 |
| 27 | 3.51 | 3.51 | 3.50 | 3.49 | 53 | 4.79 | 4.74 | 4.65 | 4.54 |
| 28 | 3.54 | 3.53 | 3.53 | 3.52 | 54 | 4.88 | 4.82 | 4.73 | 4.60 |
| 29 | 3.56 | 3.56 | 3.55 | 3.54 | 55 | 4.97 | 4.91 | 4.80 | 4.66 |
| 30 | 3.59 | 3.59 | 3.58 | 3.57 | 56 | 5.07 | 5.00 | 4.88 | 4.72 |
| 31 | 3.62 | 3.62 | 3.61 | 3.60 | 57 | 5.17 | 5.10 | 4.97 | 4.78 |
| 32 | 3.65 | 3.65 | 3.64 | 3.62 | 58 | 5.29 | 5.20 | 5.05 | 4.85 |
| 33 | 3.68 | 3.68 | 3.67 | 3.65 | 59 | 5.41 | 5.31 | 5.14 | 4.91 |
| 34 | 3.72 | 3.71 | 3.70 | 3.68 | 60 | 5.53 | 5.42 | 5.23 | 4.97 |
| 35 | 3.75 | 3.75 | 3.73 | 3.72 | 61 | 5.67 | 5.54 | 5.33 | 5.04 |
| 36 | 3.79 | 3.78 | 3.77 | 3.75 | 62 | 5.81 | 5.67 | 5.42 | 5.10 |
| 37 | 3.83 | 3.82 | 3.81 | 3.78 | 63 | 5.97 | 5.80 | 5.52 | 5.16 |
| 38 | 3.87 | 3.86 | 3.85 | 3.82 | 64 | 6.13 | 5.94 | 5.62 | 5.22 |
| 39 | 3.92 | 3.90 | 3.89 | 3.86 | 65 | 6.31 | 6.08 | 5.72 | 5.28 |
| 40 | 3.96 | 3.95 | 3.93 | 3.90 | | | | | |

V00011650023

CONFIDENTIAL                                                    ATLES_SLD000126

### SETTLEMENT OPTION TABLE II/Male
(Continued)

| Age of Payee Nearest Birth date When First Installment is Payable | Monthly Installment | | | | Age of Payee Nearest Birth date When First Installment is Payable | Monthly Installment | | | |
|---|---|---|---|---|---|---|---|---|---|
| (Per $1,000 of Net Proceeds) | | | | | | | | | |
| Male | Life With 5 Years Certain | Life With 10 Years Certain | Life With 15 Years Certain | Life With 20 Years Certain | Male | Life With 5 Years Certain | Life With 10 Years Certain | Life With 15 Years Certain | Life With 20 Years Certain |
| 66 | 6.49 | 6.23 | 5.82 | 5.33 | 91 | 14.64 | 9.64 | 7.09 | 5.75 |
| 67 | 6.69 | 6.38 | 5.92 | 5.38 | 92 | 15.00 | 9.68 | 7.10 | 5.75 |
| 68 | 6.90 | 6.54 | 6.02 | 5.43 | 93 | 15.34 | 9.72 | 7.10 | 5.75 |
| 69 | 7.12 | 6.71 | 6.12 | 5.48 | 94 | 15.68 | 9.75 | 7.10 | 5.75 |
| 70 | 7.35 | 6.87 | 6.21 | 5.52 | 95 | 16.00 | 9.78 | 7.10 | 5.75 |
| 71 | 7.60 | 7.05 | 6.30 | 5.55 | 96 | 16.30 | 9.80 | 7.10 | |
| 72 | 7.86 | 7.22 | 6.39 | 5.59 | 97 | 16.59 | 9.81 | 7.10 | |
| 73 | 8.13 | 7.40 | 6.47 | 5.62 | 98 | 16.86 | 9.82 | 7.10 | |
| 74 | 8.42 | 7.57 | 6.55 | 5.64 | 99 | 17.11 | 9.83 | 7.10 | |
| 75 | 8.72 | 7.75 | 6.62 | 5.66 | 100 | 17.33 | 9.83 | 7.10 | |
| 76 | 9.04 | 7.92 | 6.69 | 5.68 | 101 | 17.53 | 9.83 | | |
| 77 | 9.37 | 8.09 | 6.75 | 5.70 | 102 | 17.69 | 9.83 | | |
| 78 | 9.72 | 8.26 | 6.81 | 5.71 | 103 | 17.82 | 9.83 | | |
| 79 | 10.08 | 8.42 | 6.86 | 5.72 | 104 | 17.92 | 9.83 | | |
| 80 | 10.44 | 8.57 | 6.90 | 5.73 | 105 | 18.00 | 9.83 | | |
| 81 | 10.82 | 8.71 | 6.94 | 5.74 | 106 | 18.05 | | | |
| 82 | 11.21 | 8.85 | 6.97 | 5.74 | 107 | 18.08 | | | |
| 83 | 11.59 | 8.97 | 7.00 | 5.75 | 108 | 18.10 | | | |
| 84 | 11.99 | 9.09 | 7.02 | 5.75 | 109 | 18.11 | | | |
| 85 | 12.38 | 9.20 | 7.04 | 5.75 | 110 | 18.11 | | | |
| 86 | 12.76 | 9.29 | 7.05 | 5.75 | | | | | |
| 87 | 13.15 | 9.38 | 7.07 | 5.75 | | | | | |
| 88 | 13.53 | 9.46 | 7.08 | 5.75 | | | | | |
| 89 | 13.91 | 9.53 | 7.08 | 5.75 | | | | | |
| 90 | 14.28 | 9.59 | 7.09 | 5.75 | | | | | |

CONFIDENTIAL                                    ATLES_SLD000127

# ADJUSTABLE TERM INSURANCE RIDER

This rider is a part of the policy to which it is attached if this rider is shown in the Schedule. This rider must be read with all policy provisions. This rider does not participate in our surplus earnings. The insured under this rider is listed in the Schedule. This rider has no loan value. There is no surrender charge applicable to this rider. The rider effective date is the policy date or, if added later, the monthly processing date on or next following the date your application for this rider is approved by us. The owner of the policy is the owner of this rider.

**THE DEATH BENEFIT.** Subject to this rider's terms, we will pay the term death benefit in force on the date of the insured's death. This benefit is payable to the beneficiary.

The amount of term death benefit is the difference between the total death benefit and the base death benefit provided by the policy. Total death benefit depends on which death benefit option is in effect.

Option 1:  If option 1 is in effect, the total death benefit is the greater of
  a)  The target death benefit; or
  b)  The account value multiplied by the appropriate factor from the Death Benefit Factors shown in the Schedule.

Option 2:  If option 2 is in effect, the total death benefit is the greater of:
  a)  The target death benefit plus the account value; or
  b)  The account value multiplied by the appropriate factor from the Death Benefit Factors shown in the Schedule.

Option 3:  If option 3 is in effect, the total death benefit is the greater of:
  a)  The target death benefit plus premiums paid less withdrawals; or
  b)  The account value multiplied by the appropriate factor from the Death Benefit Factors shown in the Schedule.

In no event will the term death benefit be less than zero. It is also not increased or decreased by policy loan activity.

In your application for this rider you may request a pattern of increasing target death benefits. The actual target death benefit is subject to our approval.

The target death benefit is shown in the Schedule attached to your policy. It may be a constant amount or it may change at the beginning of a policy year. The target death benefit may be reduced if there is a partial withdrawal.

If a partial withdrawal reduces the stated death benefit, the target death benefit for the current year and all future years will be reduced by an amount equal to the reduction in the stated death benefit. You will receive a new Schedule reflecting the new target death benefit. See your policy for details. The stated death benefit is defined in your policy.

**COST OF INSURANCE.** The cost of insurance for this rider is determined on a monthly basis. The cost is added to the policy's monthly deduction from the account value as of each monthly processing date until this rider terminates. The cost of insurance rates will be determined by us from time to time and may differ from the cost of insurance rates applicable to the base policy coverage segments. The Company will refer to the issue age, gender and premium class of the insured as of the rider effective date as well as the duration since the rider effective date in applying its current rates for each insured. The cost of

R1331-8/03                                                    V000R13310001

CONFIDENTIAL                                                    ATLES_SLD000128

insurance for this rider is calculated as the monthly cost of insurance rate for this rider multiplied by the death benefit (in thousands) for this rider. The monthly guaranteed maximum cost of insurance rates per $1,000 for this rider are shown in the Schedule on the applicable table of guaranteed rates attached to your policy.

**INCONTESTABILITY**. After this rider has been in force while the insured is alive for two years from the rider effective date, we will not contest the statements in the application for this rider attached at the time the rider is issued.

After this rider has been in force while the insured is alive for two years from the effective date of any applied - for increase in the amount of insurance, we will not contest the statements in the application for the increase.

After this rider has been in force while the insured is alive for two years from the effective date of any reinstatement of this rider, we will not contest the statements in the application for such reinstatement of this rider.

**SUICIDE EXCLUSION**. If the policy terminates for suicide, this rider will then terminate without value.

If the insured commits suicide, while sane or insane, within two years of the rider effective date, we will terminate this rider and make a limited payment to the beneficiary for the rider. We will pay in one sum the amount of the cost of insurance for this rider which was deducted from the policy.

If the insured commits suicide, while sane or insane, within two years of the effective date of an applied - for increase, we will terminate the increase and pay the cost of insurance associated with the increase.

**MISSTATEMENT OF AGE OR GENDER.** If the insured's age or gender has been misstated, the death benefit will be adjusted. Notwithstanding the Incontestability provision above, the death benefit will be that which the cost of insurance which was deducted from the policy value on the last monthly processing date prior to the death of the insured would have purchased for the insured's correct age or gender.

**CHANGE IN AMOUNT OF COVERAGE.** You may request that the target death benefit be increased or decreased by sending a written request to our Customer Service Center.

**Decreases in Amount of Coverage.** Decreases are not allowed before the first rider anniversary. You may decrease the target death benefit only once each policy year. Any decrease in coverage may not be for an amount less than $1,000. Any requested decrease in target death benefit is subject to our approval. Our approval may be conditioned on eliminating any future increases to the target death benefit that are shown in the Schedule. For any decrease in coverage, the effective date will be the monthly processing date that falls on or next follows receipt and our acceptance of the written request to reduce coverage. Any decrease in the total death benefit will first reduce adjustable term insurance before stated death benefit is reduced.

**Increases in Amount of Coverage.** Increases to the target death benefit may be requested on the first monthly processing date following this rider's effective date. Any increase in coverage may not be for an amount less than $1,000. Any request for increased death benefits will automatically be an increase to the stated death benefit as well as to the target death benefit unless you specifically request an increase only to the target death benefit. You may increase the target death benefit only once each policy year. You may not increase your insurance coverage schedule provided by this rider after you reach attained age 85.

Any request for an increase must be applied for on a supplemental application. The increase is subject to evidence satisfactory to us that the insured is still insurable according to our normal rules of underwriting

R1331-8/03                                    2                        V000R13310002

CONFIDENTIAL                                                                    ATLES_SLD000129

for the current premium class for this type of rider. If there is no change in premium class, the increase will be processed.

For any increase or addition to coverage, the effective date will be the monthly processing date that falls on or next follows the date the supplemental application is approved by us.

A supplemental Schedule will be issued for any change in coverage.

**TERMINATION.** This rider will terminate on the earliest of the following dates:

a)   Expiration of the grace period of the policy.
b)   Termination or surrender of the policy.
c)   Receipt by us of a written request from you to cancel this rider on any monthly processing date.
d)   Policy anniversary nearest the insured's 100th birth date.

**REINSTATEMENT.** If you reinstate your policy under the Reinstatement provision in the policy, this rider will be reinstated.

Signed for the company at Denver, Colorado

**SECURITY LIFE OF DENVER INSURANCE COMPANY**

SECRETARY

CONFIDENTIAL                                                                                                           ATLES_SLD000130

**SECURITY LIFE OF DENVER INSURANCE COMPANY**
Denver, Colorado

ENDORSEMENT REGARDING NOTICE OF LAPSE AND OPTION
TO ADD A SECONDARY ADDRESSEE IN FLORIDA

KEEP THIS ENDORSEMENT WITH YOUR LIFE INSURANCE POLICY.
IT MAY BE IMPORTANT TO YOU IN THE FUTURE

**Notice of Possible Lapse**
This endorsement modifies the lapse notice procedures for life insurance policies where the policy owner or the insured is 64 years of age or older, and where the policy has been in force for at least one year. After the expiration of the Grace Period we will mail to you notice of the possible lapse of your policy. We will also mail such notice to any secondary addressee you have specified to us in writing by name and address. You will have twenty-one days from the date of this notice to make the Premium payment as stated in your Policy. If we do not receive this amount in full within the twenty-one day period following the notice, the policy will lapse according to the terms of your Policy. See Grace Period in Your Policy.

This new procedure is intended to comply with Section 627.4555 of the Florida Insurance Code and will be construed accordingly. It does not modify any of the terms and conditions of the policy other than those specifically stated in the endorsement.

**Secondary Addressee**
If your policy was issued, or renewed, on or after October 1, 1995, you have the right to designate a secondary addressee to whom we will also send the notice of possible lapse under the circumstances described above.

In order for this benefit to be effective, you must submit a written request to designate a secondary addressee. The secondary addressee will receive duplicate lapse notices that are sent to you. Such request must be on a form acceptable to Security Life and must state the policy number, the owner's name, the owner's date of birth and the complete name and address of the designated secondary addressee. The request must be signed and dated by the policyowner in order to be accepted. Contact your agent or Security Life at 1-877-253-5050 to obtain an election form.

**Definitions**
You and Your – the owner of the policy
We – Security Life of Denver Insurance Company

SECURITY LIFE OF DENVER INSURANCE COMPANY

SECRETARY

E-2003

FPCNE2003FL01

CONFIDENTIAL

Security Life of Denver Insurance Company
Denver, Colorado

**IMPORTANT NOTICE**

To obtain information or make a complaint
you may contact your Client Service Representative at
Security Life of Denver Insurance Company at the following toll-free telephone number:

1-877-253-5050

You may also write to Security Life of Denver Insurance Company at:

Security Life of Denver Insurance Company
P.O. Box 5065
Minot, ND 58702-5065

E-1323

FPCNE1323FL01

## ACCELERATED DEATH BENEFIT RIDER

**This benefit is intended to qualify as an accelerated death benefit under the Internal Revenue Code. Receiving this type of benefit may have tax consequences for you and the insured and is subject to how the Internal Revenue Service interprets the law. As with all tax matters, you should consult your own tax advisor to assess the impact of this benefit. Receipt of an accelerated benefit payment will reduce death benefits and availability of cash values.**

This rider is a part of the policy to which it is attached. It must be read with all policy provisions. This rider does not participate in our surplus earnings. This rider has no loan or surrender value. This rider provides a benefit with respect to coverage on the person named as the insured under the policy to which this rider is attached. The effective date of this rider is the effective date of the policy to which this rider is attached.

### BENEFIT

We will pay an accelerated benefit if the insured is terminally ill, subject to the provisions of this rider. If this rider is attached to a joint and last survivor policy, you may not request payment of this benefit until there is only one surviving insured. No premium is charged for this benefit.

The maximum amount you may accelerate shall not exceed the lesser of 75% of the eligible coverage or $1,000,000. Amounts accelerated under this rider and any similar rider issued by us covering the insured will count toward that maximum. After the death benefit has been accelerated, the remaining face amount (or stated death benefit, if applicable) must be at least $25,000. If the remaining face amount is less than $25,000, the entire face amount must be accelerated, less any outstanding loan plus unpaid loan interest. The minimum amount you may accelerate is $10,000.

If, under these rules, all eligible coverage is accelerated, your policy will no longer provide any benefits or value, except for riders on persons other than the insured under the base policy. Insurance provided by the policy on someone other than this insured will be processed as if the original policy was terminated due to the death of the insured. If not all of the eligible coverage is accelerated, your policy will continue in force with reduced benefits and values. The amount accelerated divided by the eligible coverage is the acceleration percentage. We reserve the right to refuse to process any request that would cause the remaining policy to not qualify as a life insurance contract under the Internal Revenue Code. (See Effect on Your Policy provision). If the policy is in force under an extended term insurance option or reduced paid up insurance option, none of the coverage is eligible for acceleration.

### DEFINITIONS

**Terminal illness** is a non-correctable medical condition that, with reasonable medical certainty, will result in the death of the insured in twelve (12) months or less from the date of a written statement signed by a licensed physician.

**Licensed physician** is a person who is legally licensed to practice medicine or surgery by the state in which he or she performs such function or action. A licensed physician is duly qualified and practicing within the scope of the license who is:

1. a physician or surgeon practicing medicine and surgery who is entitled to, and uses, the designation M.D.; or
2. a practicing physician of osteopathy who is entitled to, and uses, the designation D.O.

This person may not be you, the insured, or a beneficiary. This person may not be related to you, the insured or a beneficiary.

R-2022-10/01                                               VP00R20220001

CONFIDENTIAL                                   ATLES_SLD000133

**Certification by a licensed physician** is a written statement acceptable to us, signed by a licensed physician, which gives the physician's diagnosis of the insured's terminal illness.

**Eligible Coverage** is the amount we would pay under the policy, including any riders, if the insured were to die on the date of acceleration.

**Date of acceleration** is the date on which we approve your written request for an accelerated benefit.

## BENEFIT AMOUNT

To determine the benefit amount, we will discount the acceleration amount to its present value and then deduct any current policy loan and accrued loan interest. The present value calculation uses a 12-month discount with an annual interest rate that will not exceed the greater of:

1. the yield on 90-day Treasury bills on the day we receive your request for an acceleration of benefits; or
2. the statutory maximum policy loan interest rate.

The benefit amount will be at least the amount of the net surrender value times the percentage of the eligible coverage that is accelerated under this rider.

We will pay the benefit amount in one lump sum.

## BENEFIT CONDITIONS FOR TERMINAL ILLNESS

To be terminally ill under this rider, you must give us evidence that satisfies us that the insured's life expectancy is 12 months or less. This evidence will include, but is not limited to, certification by a licensed physician. The licensed physician may not be you, the insured, or the brother, sister, parent, spouse or child of either you or the insured. We will not pay the accelerated benefit if the terminal illness results from intentionally self-inflicted injuries. We will not pay the accelerated benefit if any part of the death benefit under the policy is contestable.

A payment under this rider will be made only once. No additional accelerated benefit is payable upon diagnosis of a different or related terminal illness.

You are not eligible for this rider benefit if you are required by law or a government agency to obtain this benefit due to a bankruptcy, creditor claims, or government benefit qualification.

## EFFECT ON YOUR POLICY

If not all the eligible coverage is accelerated, the policy will stay in force at a reduced amount. The face amount (or stated death benefit, if applicable), of the policy, surrender values, and any policy loan and accrued interest will be reduced by the percentage of eligible coverage that is accelerated (the acceleration percentage). All riders on the insured under the base policy will be reduced in the same manner. For example, if the acceleration percentage is 75%, the new face amount will be 25% of the amount just prior to the acceleration. If you elect to accelerate all of the eligible coverage, all other benefits under the policy on the insured under the base policy will terminate. For any other insurance provided by the policy on someone other than this insured, we will continue such insurance as if the policy ended due to the insured's death.

R-2022-10/01                                2                          VP00R20220002

## PROCEDURES

To obtain any benefit provided by this rider we must receive written notice from the policy owner, in a form acceptable to us, that you want to receive this rider benefit. The appropriate claim forms and procedures will be forwarded to you immediately. We will require the policy be sent to us. If the policy is assigned, the assignee must consent to the exercise of any rights pursuant to this rider. If an irrevocable beneficiary is named as beneficiary, that beneficiary must consent to the exercise of any rights pursuant to this rider.

## WAIVER OF SPECIFIED PREMIUM OR WAIVER OF COST OF INSURANCE

The insured will be deemed to be totally disabled for as long as the most recently provided proof of terminal illness continues to apply, subject to a limit of one year, if all of the following occur:

1.  a waiver of specified premium or waiver of cost of insurance rider is attached to this policy;
2.  the waiver of specified premium or waiver of cost of insurance rider is in force at the time of the claim for this rider's benefits; and
3.  proof of terminal illness is submitted and approved.

## TERMINATION

This rider will end on the earliest of the following dates:

1.  the termination or surrender of this policy;
2.  the date the benefit under this rider is elected;
3.  the monthly anniversary on or next following the receipt of your written request to terminate this benefit; or
4.  the date the policy is in force under an extended term option or a reduced paid-up option.

SECURITY LIFE OF DENVER INSURANCE COMPANY

SECRETARY

R-2022-10/01                                 3                    VP00R20220003



1603978          Danie██████          126342          DSARS

## AMENDMENT TO ORIGINAL APPLICATION

I amend my application for insurance dated May 09, 2005 as
follows. I understand and agree that this is part of
my application and will be considered part of my contract.

*I certify that since the Application date, the proposed insured has not consulted professionally with any physician,
medical practitioner, hospital, clinic, or other medical or medically-related facility for any reason except for the
purpose of having a medical examination for life insurance provided by this Policy.*

*I certify that (1) I have reread the questions and answers on the Application, and (2) the health, habits, occupation
and other facts remain the same on this date as they are represented in the Application. They are still true and
complete.*

*I understand that (1) this is to be relied upon and form the basis of any insurance, and (2) no information will be
considered as having been given to the company issuing the Policy unless it is in the Application.*

*I agree that suicide and incontestable periods in the Policy will run from the earlier of this delivery date or the
Policy Date.*

Dated in Del Ray Beach, FL on this _____ day of _____, 2005

Danie██████

P.O. Box 5065
Minot, ND 58702-5065
110945

Security Life of Denver Insurance Company

# ING 

1603978          Daniel ████          126342          DSARS

### AMENDMENT TO ORIGINAL APPLICATION

I amend my application for insurance dated May 09, 2005 as
follows. I understand and agree that this is part of
my application and will be considered part of my contract.

**SECTION A**
Initial Product Solicited - ING LifeDesign Strategic Accumulator

**SECTION E**
3. Have you consulted a medical doctor or other practitioner since the above examination? (If yes, see Section M)
  Proposed Insured - Yes

**SECTION F**
1. Base Policy Amount (Not including Term Rider) - $ 1,500,000
2. Mode of Payment - Quarterly
3. Planned/Scheduled Premium - $ 34,175.41

**SECTION G**
1. Riders:
  Adjustable Term Insurance Rider - $ 1,500,000 -  (Specify Target Death Benefit) - $ 3,000,000

**SECTION L**
7. Do you have any other applications for life insurance pending?
  Proposed Insured – Yes – Companion Life for $ 1,800,000
8. If yes, will all applications now pending for life insurance be accepted and placed in force?
  Proposed Insured – Companion Life for $ 1,800,000 to replace Equitable of $ 3,500,000
9. List company(ies) and amount(s) of coverage applied for: Total insurance to be placed in-force with all
companies not to exceed $ 5,000,000.
17. Are you a US Citizen?
  Proposed Insured - Yes

**SECTION M**
4c. Chest pain, palpitations, high blood pressure, heart murmur, heart attack or other disorder of the heart of
blood vessels?
  Proposed Insured – Yes - Treated for hypertension by Dr. Greenspahn.
5c. Been advised to have operation(s) or diagnostic tests not yet performed in the last 10 years?
  Proposed Insured – Yes – Normal EBCT of coronary arteries done in 2002, due to other findings on this study
insured has had follow-up  chest CAT scans. Latest chest CAT scan done 2/2005 was stable. No further work-up
required.
5f. In the last 10 years been confined for observation, care, or treatment in a hospital or other health care facility?
  Proposed Insured - Yes

Dated in Del Ray Beach, FL on this _____ day of _____, 2005

Daniel ████

P.O. Box 5065                                    Security Life of Denver Insurance Company
Minot, ND 58702-5065
110945

ING Financial Serv    4/5/2005 11:49    PAGE    8/19    RightFax

6270-105
Nemco
Agent ID#
6270-106 Cooper

## LIFE INSURANCE APPLICATION

| Initial Product Solicited: _____ | Issued by:<br>☐ ReliaStar Life Insurance Company<br>☐ Security Life of Denver Insurance Company |
|---|---|

☐ Check here if insurance is for a tax-qualified, pension, or ERISA covered welfare benefit plan and complete Section 5 in the Agent's Report.
Employer sponsored? ☐ Yes ☐ No

### Section A. Proposed Primary Insured Information

| 1. Name (First, MI, Last) Daniel ▓▓▓ | 2. Social ▓▓▓ | ▓▓▓ License Number | State PL |
|---|---|---|---|

| 4. Date of Birth ▓▓/▓▓ | 5. Sex ☒M ☐F | 6. Place of Birth Brooklyn NY | 7. Telephone Number ( ) ▓▓▓ | 8. Annual Earned Income $ |
|---|---|---|---|---|

| 9. ▓▓▓ Address ▓▓▓ | City Del Ray Beach | State FL | Zip Code 33446 | 10. Occupation/duties retired/Form Presby |
|---|---|---|---|---|

| 11. Employer Mercury Paint Corp ~ 4808 Farragut Road - Brooklyn NY 11203 |
|---|

| 12. Do you currently use or have you ever used tobacco or nicotine products in any form, e.g., cigarettes, cigars, pipes, chewing tobacco, nicotine gum or nicotine patches? ☐ Yes ☒ No  If yes, type _____ daily amount _____ month/year last used _____<br>Type _____ daily amount _____ month/year last used _____ |
|---|

### Section B. Proposed Other Insured

| 1. Name (First, MI, Last) | 2. Social Security Number | 3. Driver's License Number | State |
|---|---|---|---|

| 4. Date of Birth | 5. Sex ☐M ☐F | 6. Place of Birth | 7. Telephone Number ( ) | 8. Annual Earned Income $ |
|---|---|---|---|---|

| 9. Residence Street Address | City | State | Zip Code | 10. Occupation/duties |
|---|---|---|---|---|

| 11. Employer | 12. Relationship to Proposed Insured |
|---|---|

| 13. Do you currently use or have you ever used tobacco or nicotine products in any form, e.g., cigarettes, cigars, pipes, chewing tobacco, nicotine gum or nicotine patches? ☐ Yes ☐ No  If yes, type _____ daily amount _____ month/year last used _____<br>Type _____ daily amount _____ month/year last used _____ |
|---|

### Section C. Secondary Addressee
(Florida law allows the applicant to name a secondary addressee to receive certain notices. Any secondary addressee named will be provided with a notice of any lapse that may occur after the insured reaches age 64 or older)

| 1. Secondary Addressee Name (First, MI, Last) | | | |
|---|---|---|---|
| 2. Residence Street Address | City | State | Zip Code |

### Section D. Proposed Owner Information
Complete if the Owner is other than the Proposed Primary Insured. If the Proposed Primary Insured is a minor, always specify the Owner.

| 1. Owner Name if other than Proposed Primary Insured or Name of Trust and Trustee | 2. Relationship to Proposed Primary Insured |
|---|---|

| 3. Date of Trust | 4. Date of Birth | 5. Social Security Number or Tax ID Number |
|---|---|---|

| 6. Residence Street Address | City | State | Zip Code |
|---|---|---|---|

| 7. Address for Premium Notice if Other than Residence | City | State | Zip Code |
|---|---|---|---|

### Section E. Medical Transfer Statement
Complete when submitting medical examinations of another insurance company.

| | Proposed Insured | | Proposed Other Insured | |
|---|---|---|---|---|
| 1. Name of the insurance company for which examination(s) was made and date of examination: Pacific Life and Annuity | Yes | No | Yes | No |
| 2. To the best of your knowledge and belief, are the statements in the examination true and complete today? | ☒ | ☐ | ☐ | ☐ |
| 3. Have you consulted a medical doctor or other practitioner since the above examination? (If yes, see Section M) | ☐ | ☒ | ☐ | ☐ |

110947 (Revised 10/03)                    1                    Order Number 127865

CONFIDENTIAL                                                    ATLES_SLD000138

## Section F.  Base Policy Information

*Must attach a copy of the illustration signed by the applicant.*

| 1. Base Face Amount *(Not including Term Riders)* | 2. Mode of Payment | 3. Planned/Scheduled Premium |
|---|---|---|
| $ 10,000,000 | Annual | |

4. Product Type  ☒ Fixed   ☐ Variable – *(Owner must receive a current prospectus, and investment feature selection form must be completed if applying for a variable life insurance policy.* **THE DEATH BENEFIT MAY BE VARIABLE OR FIXED UNDER CERTAIN CONDITIONS, AND THE CASH VALUES MAY INCREASE OR DECREASE IN ACCORDANCE WITH THE EXPERIENCE OF THE SEPARATE ACCOUNTS.)**

5. Death Benefit Option:  ☒ A or 1–Level   ☐ B or 2–Increasing or Variable   ☐ C or 3 – Face Amount + Premium

6. Death Benefit Qualification Test:    ☐ Guideline Premium Test   ☐ Cash Value Accumulation Test

7. Rate Class Quoted:  ☒ No Tobacco       ☐ Alternate Tobacco *(cigars, pipes, chewing tobacco, nicotine gum or patch)*
☐ Tobacco (cigarettes)   ☐ Other

## Section G.  Rider Information.  Illustration required for permanent products.

*Check appropriate box and enter amounts. (NOT ALL RIDERS ARE AVAILABLE WITH ALL PRODUCTS.)*

1. Riders:
☐ Accelerated Benefit Rider
☐ Waiver of Premium (Term)
☐ Waiver of Monthly Deduction  or Cost of Insurance Rider
☐ Waiver of Specified Premium Rider ................ $ _____
  *(Specify monthly premium – illustration required)*
☐ Additional Insured Rider *(on Primary Insured)* ... $ _____
☐ Additional Insured Rider *(on Additional Insured)* .. $ _____
☐ Accidental Death Benefit Rider ......................... $ _____

☐ Children's Insurance Rider ......................... $ _____
  *(Complete supplement)*
☐ Extension of Rate Guarantee Rider ................. $ _____
☐ Term Rider *(Specify)* ................................. $ _____

_____

☐ Adjustable Term Insurance Rider .................. $ _____
  *(Specify Target Death Benefit)*

_____

☐ Future Purchase Option Rider ...................... $ _____
☐ Other _____ $ _____
☐ Other _____ $ _____

2. Special Dating Request: ☐ Date to save age  ☐ Specific date   *Month* _____ *Day* _____ *Year* _____

## Section H.  Suitability (Complete for Variable Products only)

| | |
|---|---|
| 1. Have you, the proposed owner, received a current prospectus including supplements for the variable life insurance policy and each of the Variable Account Investment Options? <br><br> The policy prospectus/supplement is dated _____ | ☐ Yes  ☐ No |
| 2. Do you understand that the amount or duration of the policy death benefit may vary under specified conditions; that policy values may increase or decrease in accordance with the investment experience of the investment options; that they may also increase in accordance with the interest credited in the Guaranteed Interest Division; and that the amount payable at the final policy date is not guaranteed, but is dependent on the account value and amounts owed under the policy at that time? | ☐ Yes  ☐ No |
| 3. Do you understand that the fluctuation in values under the policy means that scheduled premium payments may not be sufficient to keep the policy in force in a down market? | ☐ Yes  ☐ No |
| 4. Do you understand that personalized illustrations are based on hypothetical rates of return which may not be indicative of future investment experience or of actual interest credited in the Guaranteed Interest Division? | ☐ Yes  ☐ No |
| 5. With this in mind, is the policy in accordance with your insurance objectives and your anticipated financial needs? | ☐ Yes  ☐ No |
| 6. Do you believe you have the financial ability to continue making premium payments on this policy? | ☐ Yes  ☐ No |

110947 (Revised 10/03)                              2                              Order Number 127865

CONFIDENTIAL                                                                    ATLES_SLD000139

ING Financial Serv    4/5/2005 11:49   PAGE 10/19   RightFax

## Section I. Beneficiary Information for Proposed Primary and Joint Insureds

*Unless otherwise stated, the beneficiary designation is revocable and beneficiaries of like class shall share equally with right of survivorship.*

**1.** *If Trust, provide name and date of trust agreement. If Corporation, provide state of incorporation.*

| a. Primary Beneficiary(ies) *(Print full names and addresses)* | Relationship to Proposed Insured | Birthdate | Social Security Number/ Tax ID | % |
|---|---|---|---|---|
| Millicent ████ | Spouse | ████████ | ████████████ | 100 |

| b. Contingent Beneficiary(ies) *(Print full names and addresses)* | Relationship to Proposed Insured | Birthdate | Social Security Number/ Tax ID | % |
|---|---|---|---|---|
| | | | | |

## Section J. Beneficiary Information for Proposed Other Insured or Additional Insured Rider

*Unless otherwise stated, the beneficiary designation is revocable and beneficiaries of like class shall share equally with right of survivorship.*

**1.** *If Trust, provide name and date of trust agreement. If Corporation, provide state of incorporation.*

| a. Primary or Base Additional Insured Rider Beneficiary *(Print full names and addresses)* | Relationship to Proposed Insured | Birthdate | Social Security Number/ Tax ID | % |
|---|---|---|---|---|
| | | | | |

| b. Contingent or Joint Additional Insured Rider Beneficiary *(Print full names and addresses)* | Relationship to Proposed Insured | Birthdate | Social Security Number/ Tax ID | % |
|---|---|---|---|---|
| | | | | |

## Section K. Financial Information

**1.** Personal Finances: Check box(es) to indicate purpose of insurance.

☒ Estate Liquidity  ☐ Family Protection  ☐ Loan Protection  ☐ Tax Planning  ☐ Retirement Planning  ☐ Cash Accumulation  ☐ Other_____

| a. Annual Interest & Other Income | b. Total Assets | c. Total Liabilities | d. Total Net Worth |
|---|---|---|---|
| 500,000 | 5,000,000 + | | 5,000,000 + |

**2.** Business Finances *(Complete question #2 only if this is business insurance.)*

☐ Key Employee  ☐ Buy/Sell  ☐ Creditor  ☐ Employee Benefits (Split Dollar, Deferred Compensation, etc.)  ☐ Other _____

| a. Total Assets | b. Total Liabilities | c. Net Worth | d. Net Profit After Taxes for Past Two Years: | |
|---|---|---|---|---|
| | | | Last Year | Previous Year |

| e. Name of Owner(s) | Title | Percentage of Ownership | Active in Business *(yes or no)* | Amount of Business Coverage in Force |
|---|---|---|---|---|
| | | | | |

f. Is other insurance being applied for concurrently on Proposed Insured or other officers?  ☐ Yes  ☐ No  *If yes, complete the following:*

| Insurance Company Name | Amount | Officer or Proposed Insured |
|---|---|---|
| | | |

110947 (Revised 10/03)                    3                    Order Number 127865

'AGE 10/19 * RCVD AT 4/5/2005 11:48:50 AM [Central Daylight Time] * SVR:MSPNT828R/18 * DNIS:16753 * CSID:ING Financial Serv * DURATION (mm-ss):15-16

CONFIDENTIAL

ING Financial Serv    4/5/2005 11:49    PAGE 11/19    RightFax

## Section L. General Information for Application for Life Insurance
*Complete the following on all Proposed Insureds, including children to be covered under the Children's Insurance Rider.*

**1. Life Insurance In Force** *(If none, check none.)*  ☐ None

| Proposed Insured's Name | Company | Personal Life Benefit | Business Life Benefit | Accidental Life Benefit | Date Issued |
|---|---|---|---|---|---|
| Daniel and ▮▮▮▮▮ ▮▮▮ | Equitable | Pr. 3,500,000 | | | 10/27/97 |

|  | Proposed Insured Yes No | Proposed Other Insured Yes No |
|---|---|---|
| 2. Are you considering using funds from your existing policies or contracts to pay premiums due on the new policy or contract? *(If yes, complete state required replacement form.)* | ☐ ☒ | ☐ ☐ |
| 3. Are you considering discontinuing making premium payments, surrendering, forfeiting, assigning to the insurer or otherwise terminating your existing policy or contract? *(If yes, complete state required replacement form and provide details below.)* | ☐ ☒ | ☐ ☐ |

| Proposed Insured's Name | Company | Policy Number | Amount |
|---|---|---|---|
| | | | |

|  | Yes No | Yes No |
|---|---|---|
| 4. Is this insurance intended to be a tax free exchange – 1035 Exchange? *(1035 not available on term rider)* | ☐ ☐ | ☐ ☐ |
| 5. If yes, will a policy loan be carried over? | ☐ ☐ | ☐ ☐ |
| 6. Will the applicant accept this policy if it is a "Modified Endowment Contract" at issue? | ☐ ☐ | ☐ ☐ |
| 7. Do you have any other applications for life insurance pending? | ☐ ☐ | ☐ ☐ |
| 8. If yes, will all applications now pending for life insurance be accepted and placed in force? | ☐ ☐ | ☐ ☐ |
| 9. List company(ies) and amount(s) of coverage applied for. | ☐ ☐ | ☐ ☐ |

| Proposed Insured's Name | Company | Amount Applied For |
|---|---|---|
| | | |

|  | Yes No | Yes No |
|---|---|---|
| 10. Have you in the last 12 months had any known or suspected heart attack, stroke, or cancer, or been treated by any physician or other practitioner for any of these conditions? | ☐ ☒ | ☐ ☐ |
| 11. Have you in the last 60 days been advised by any physician or other practitioner to have any diagnostic test or surgery not yet performed? | ☐ ☒ | ☐ ☐ |
| 12. Have you in the last 10 years tested positive for exposure to the HIV infection or been diagnosed as having ARC or AIDS caused by the HIV infection or other sickness or condition derived from such infection? | ☐ ☒ | ☐ ☐ |
| 13. Have you in the last five years had any motor vehicle accidents, alcohol or drug related convictions, or other moving violations while operating a motor vehicle? | ☐ ☒ | ☐ ☐ |
| 14. Except for traffic violations, have you been convicted in a criminal proceeding or been the subject of a pending criminal proceeding? | ☐ ☒ | ☐ ☐ |
| 15. Provide the details for all yes answers to questions 10-14. | ☐ ☒ | ☐ ☐ |

| Proposed Insured's Name | Question # | Details |
|---|---|---|
| | | |

|  | Yes No | Yes No |
|---|---|---|
| 16. Are you a member of the armed forces, including the Reserves or on alert? *(If yes, complete Military Questionnaire)* | ☐ ☒ | ☐ ☐ |
| 17. Are you a US citizen? *(If no, complete the Foreign Travel and Residence Questionnaire)* | ☒ ☐ | ☐ ☐ |
| 18. Have you ever traveled or resided outside the United States? *(If yes, complete the Foreign Travel and Residence Questionnaire)* | ☐ ☒ | ☐ ☐ |
| 19. Have you in the last five years made flights in an aircraft OTHER than as a passenger on a scheduled airline? *(If yes, complete the Aviation Questionnaire)* | ☐ ☒ | ☐ ☐ |
| 20. Do you or have you in the past participated in hang-gliding, soaring, sky-diving, ballooning, skin or scuba diving, mountain climbing, competitive skiing, rodeos, or any other hazardous sports or activities? *(If yes, complete appropriate questionnaire)* | ☐ ☒ | ☐ ☐ |
| 21. Do you or have you in the past participated in race, test or stunt drive automobiles, motorcycles, motor boats, or jet powered vehicles, or do you use or race snowmobiles, dirt bikes, dune buggies, etc.? *(If yes, complete motorized vehicle/powerboat questionnaire)* | ☐ ☒ | ☐ ☐ |

110947 (Revised 10/03)

4

Order Number 127865

CONFIDENTIAL

ATLES_SLD000141

05/09/2005   21:20   5610650073                    BERMAN                          PAGE  82

## Section M. Declarations of the Proposed Insureds for Application for Life Insurance

| Personal Physicians (If none, state none.) | a. Name, address and phone number of Physician | b. Date, reason and results of last consultation |
|---|---|---|
| 1. Primary Insured | [redacted] tr. | 7/2004 Routine exam all result norm) |
| 2. Other Proposed Insured | [redacted] P | |

| 3. Name | Height/Weight | Weight change in last year | Proposed Insured Yes  No | Proposed Other Insured Yes  No | Record the question number, person, condition; diagnosis and dates/duration of condition or treatment; name and address |
|---|---|---|---|---|---|
| Daniel [redacted] | 5'10"  189 | 0 | | | |

4. In the past 10 years, have you ever been treated for or been diagnosed by a licensed member of the medical profession as having:
  a. Dizziness, fainting, convulsions, optic neuritis, headache, paralysis, stroke, mental or nervous disorder?..................................................
  b. Shortness of breath, persistent hoarseness or cough, spitting of blood, asthma, emphysema, tuberculosis, or chronic respiratory disorder?.......
  c. Chest pain, palpitations, high blood pressure, heart murmur, heart attack or other disorder of the heart or blood vessels?.................
  d. Jaundice, intestinal bleeding, ulcer, hepatitis, colitis, diverticulitis, or other disorder of the stomach, intestine, liver or gall bladder? ...........
  e. Sugar, albumin, blood or pus in urine, venereal disease, nephritis, stone, or other disorder of kidney, bladder, breasts, prostate or reproductive organs?..
  f. Diabetes, thyroid or other endocrine disorder? ....................................
  g. Rheumatism, arthritis, or disorder of the muscles or bones? .................
  h. Disorder of skin, lymph glands, cyst, tumor or cancer?........................
  i. Allergies, anemia or other disorder of the blood?..............................
5. Have you:
  a. Had any operation(s) in the past 10 years? ......................................
  b. Been advised to have operation(s) or diagnostic tests not yet performed in the last 10 years?.......................................................
  c. Had an electrocardiogram, x-ray, or other diagnostic test in the last five years?.........................................................................
  d. Sought or been advised to seek help or treatment for an alcoholic habit? If yes, complete Alcohol Usage Questionnaire.
  e. In the last 10 years been confined for observation, care, or treatment in a hospital or other health care facility? ............................................
  f. In the last five years consulted any health care provider(s) not already identified for any reason including routine physical examination? ........
6. Are you:
  a. Presently taking any medication(s), including non-prescription/over the counter medication or presently under the care of a member of the medical profession for any condition?.................................
  b. Currently using, or have you ever received treatment or counseling for the use of: ecstasy, marijuana, cocaine, amphetamines, barbiturates, hallucinogenic agents, opium derivatives, or other drugs of abuse? .........
  If yes, complete Drug Use Questionnaire.

7. Family history of Proposed/Other Insured:

| | Age if living Proposed | Other | Age at death Proposed | Other | Current health or cause of death Proposed | Other |
|---|---|---|---|---|---|---|
| Father | | | 75 | | M1 | |
| Mother | | | 65 | | stroke | |
| Brothers | | | | | | |
| Sisters | | | | | | |

110947 (Revised 10/03)                          5                          Order Number 127865

05/09/2005  21:20    5618650073    BERMAN    PAGE  01

## Section N.  Authorization and Acknowledgement

By completing this life insurance application, I understand that I am applying for life insurance coverage which may be issued by one or more of the ING life companies, which include ReliaStar Life Insurance Company and Security Life of Denver Insurance Company, referred to individually or collectively as the "Company." I understand and consent that this application and information obtained pursuant to this authorization may be used by the Company to evaluate my eligibility for life insurance. For underwriting and claims purposes, I authorize any physician, medical practitioner, hospital, clinic or medically related facility, insurance or reinsuring company, Medical Information Bureau, Inc. ("MIB"), any consumer reporting agency, or any other organization to release to the Company or their authorized representatives (including any consumer reporting agency) acting on their behalf ALL INFORMATION requested by the Company about me and any minor children who are to be insured. This includes but is not limited to: (a) any medical information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition and treatment of me or my minor children who are to be insured; (b) prescription drug records and related information maintained by physicians, pharmacy benefit managers and other sources; and (c) any non-medical information about me or my minor children who are to be insured. By this authorization, each physician, medical practitioner, hospital, clinic or medically related facility contained by this authorization, and insurance or medical record in its possession concerning me or my minor children who are to be insured

I give my permission to the Company to get consumer or investigative consumer reports about these same persons.

I give my permission to the Company and other insurance companies affiliated with the Company to get any and all medical record information for the purpose described in this form. I know that my medical records, including any alcohol or drug abuse information, may be protected by Federal Regulations - 42CFR Part 2. I may revoke this permission and authorization as it applies to any information protected by 42CFR Part 2 or by applicable state law at any time by mailing the written revocation to the Company at the address on the Consumer Privacy Notice page, but not to the extent action has been taken in reliance on it. I understand that the release of medical records will not be requested with respect to tests performed to determine the presence of the human immunodeficiency virus (HIV) antibody.

In connection with any application for life insurance or other insurance transaction that I may have with the Company, I specifically consent that some or all of the information obtained by this authorization may be sent to MIB, reinsurers, the agent who solicited my application and his principals, employees or coworkers who process transactions regarding any insurance coverage I may have applied for or have with the Company or affiliated companies. I understand the information obtained by use of the Authorization will be used by the Company to determine eligibility for insurance and eligibility for benefits under an existing policy.

» I understand that I may request to be interviewed if an investigative consumer report is prepared.
  You may contact me between the hours of _____ and _____. My telephone number is (___) _____.
» I know that I have a right to get a copy of this form. A photocopy of this form will be as valid as the original.
» This form will be valid for 24 months from the date shown below.
» I acknowledge receipt of the following notices: Notice Regarding Consumer Reports; Notice Regarding MIB; and Notice Regarding Information Practices.

Each of the undersigned also declares that:
A. I have read the statements and answers given in this application and affirm that they are true and complete to the best of my knowledge and belief and also correctly recorded.
B. (1) This application consists of Sections A through M, supplemental questionnaires, and medical exam and will be the basis for any policy issued on this application; (2) Any policy issued on this application will not take effect unless the first full premium is paid and the policy is delivered to the Owner of such policy during the lifetime and continued insurability, as stated in the application, of the person(s) to be covered by such policy, except as otherwise provided in the Conditional Receipt, if issued, with the same date as this application; (3) Except where permitted expressly by statute or regulation, no agent or medical examiner has the authority to waive the answer to any question in the application, to pass on insurability, to make or alter any contract or waive any of the Company's rights or requirements; (4) No change in the amount, classification, age at issue, plan of insurance or benefits on this application shall be effective unless agreed to in writing by the proposed insured and owner
C. I certify, under penalty of perjury, that my social security/tax identification number(s) is shown and is correct and that I am not subject to back up withholding.

*Automatic Telephone Privileges – Variable Products Only*

I acknowledge that my policy automatically will provide telephone privileges to perform certain transactions as specified in the current prospectus to me as policy owner and to any agent/registered representative and the registered representative's assistant. I also agree that the Company and its distributor will not be liable for any loss, damage, costs or expense incurred in acting on telephone instructions reasonably believed to be authentic. The Company may employ procedures that might include requiring forms of personal identification before accepting such telephone instructions. I understand that if I do not want myself or any agent/registered representative and the registered representative's assistant to have such telephone privileges, I must indicate so below. I also understand that once granted, such privilege can be revoked only upon receipt of signed written instructions at the Company.
  ☐ I do not want telephone privileges.
  ☐ I do not want telephone privileges granted to my agent/registered representative and the registered representative's assistant.

NOTICE:  Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

| Signed by Owner at (City, State)    Del Ray Brch FL | Signature of Agent/Registered Rep. X | | | |
|---|---|---|---|---|
| Signature of Proposed Insured if age 15 or older   X   Date 5/9/05 | Agent ID # | Florida License ID # | Registered Rep. # |
| Signature of Proposed Other Insured Don Berman   X | | Date | |
| Signature of Proposed Owner if other than the Proposed Insured   X | | Date | |
| Signature of Parent or Guardian if the Proposed Owner or the Proposed Primary Insured is a minor   X | | | |
| Agent Name (Please Print)   Steven A Cooper/Wornes Brokers | | | |

110947 (Revised 10/03)                6                Order Number 127965

ATLES_SLD000143

RISK MED

## APPLICATION, PART II, - MEDICAL

**PACIFIC LIFE & ANNUITY COMPANY**
700 Newport Center Drive, Newport Beach, California 92660

**PACIFIC LIFE & ANNUITY COMPANY**

| SECTION | COMPLETE ON PROPOSED INSURED (OVER 14 YEARS AND 6 MONTHS) | | | |
|---|---|---|---|---|

1. Full Name

DANIEL

| 2a. Date of Birth | 2b. Height | 2c. Weight |
|---|---|---|
| MO  2  DAY  YR | 5 FT. 10 IN. | 189 LBS. |

3. a. Name and address of physician or practitioner last seen: _Dr. Steven Greenstein - Irving J. Woodmae, N.Y._
(IF NONE, SO STATE)

b. Date: _7/04_  MO. YR.   c. Reason consulted: _yearly physical_

Details of 'Yes' answers. (Identify question; and include diagnoses, dates, duration and names and addresses of all attending physicians and medical facilities.) Use an additional sheet if necessary.

d. Did any symptoms prompt consultation? . . . . . . . . . . . . . . . . . . . . .
e. Was any treatment given or medication prescribed? . . . . . . . . . . . . . .
(IF 'd' OR 'e' ANSWERED 'YES', GIVE DETAILS)

4. To the best of your knowledge and belief, during the past 10 years, have you been diagnosed or treated by a member of the medical profession for:
(CIRCLE APPLICABLE ITEMS AND GIVE DETAILS)

a. Disorder of the eyes, ears, nose, or throat? . . . . . . . . . . . . . . . . . . .
b. Dizziness, fainting, convulsions, headaches, speech defect, paralysis or stroke, or mental or nervous disorder? . . . . . . . . . . .
c. Hoarseness or cough, blood spitting, asthma, pneumonia, emphysema, tuberculosis, or other respiratory system disorder? . . . . .
d. Chest pain, high blood pressure, rheumatic fever, murmur, heart attack or other disorder of the heart or blood vessels? . . . . . . . . . . .
e. Jaundice, intestinal bleeding, ulcer, colitis, diverticulitis, hepatitis, or other disorder of the liver, gallbladder, stomach, or intestines? . . . . .
f. Sugar, albumin, or blood in urine; venereal disease; stone or other disorder of kidney, bladder, prostate, breasts or reproductive organs? .
g. Diabetes, thyroid or other endocrine disorders? . . . . . . . . . . . . . . . . .
h. Neuritis, sciatica, arthritis, gout, or disorder of the muscles or bones, including the spine, back, or joints? . . . . . . . . . . . . . . . . . .
i. Cancer, cyst, tumor or disorder of skin, blood or lymph glands? . . . . . .
j. Any disorder(s) of the Immune System, including AIDS (Acquired Immune Deficiency Syndrome) and ARC (AIDS-Related Complex)? . . . .

5. a. Have you within the past 5 years been a patient in a hospital, clinic, sanitarium or other medical facility? . . . . . . . . . . . . . . . . . . . . . . . .
b. Are you now under regular medical observation or taking treatment? . . .

6. a. Except as prescribed by a physician, have you used heroin, morphine or other narcotic drugs in the last 10 years? . . . . . . . . . . . .
b. Except as prescribed by a physician, have you used cocaine, LSD, marijuana or other hallucinogenic agents, or barbiturates, sedatives, tranquilizers or any amphetamines in the last 5 years? . . . . . . . . . . . .
c. In the last 5 years have you received treatment for or joined an organization because of alcoholism or drug addiction? . . . . . . . . . . . .

7. Other than as stated in answers above (and except as regards HIV), have you within the past 5 years:
a. Had a checkup, consultation, illness, injury or operation? . . . . . . . . . . .
b. Had an electrocardiogram, blood test, other test or X-ray? . . . . . . . . . .
c. Been advised to have any diagnostic test, hospitalization or surgery which was not completed? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

8. Have you had any change in weight in the past year? . . . . . . . . . . . . . .
9. Have either of your parents, brothers or sisters had diabetes, cancer, high blood pressure, heart disease, or mental illness? . . . . . . . . . . . . .
(IF 'YES', STATE CONDITION, GIVE RELATIONSHIP AND AGE AT ONSET)

10. Parents' Record (COMPLETE BELOW):

| | IF LIVING | | IF DECEASED | |
|---|---|---|---|---|
| | AGE | STATE OF HEALTH | AGE AT DEATH | CAUSE OF DEATH |
| Father | | | 75 | Heart attack |
| Mother | | | 65 | Stroke |

11. a. Do you currently smoke cigarettes? . . . . . . . . . . . . . . . . . .
b. If 'Yes', how many a day?
c. Did you ever smoke cigarettes? . . .
d. If 'Yes' on 11(c), give date last cigarette smoked: ____ MON. ___ YR.

e. Do you use tobacco in any other form?
(IF 'YES', SPECIFY TYPE IN 'REMARKS')
Have you used tobacco in any other form within the last 24 mos.? . . . .
(IF 'YES', SPECIFY TYPE IN 'REMARKS')

The above statements are true and complete to the best of my knowledge and belief. I agree that such statements and answers shall be attached to and made part of the application.

Dated at _East Rockaway NY_ _10/13/04_
CITY              MO. DAY. YR.

X _[signature]_
SIGNATURE OF PROPOSED INSURED

WITNESS _Dr. Shelly MD_

AP8601-1-NY                    Page 1 of 2                    85-21241-00 5/2000

**This policy is a FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY.**
**Death benefit proceeds payable at the insured's Death.**
**Flexible premiums are payable until Attained Age 100.**
**This policy is nonparticipating and is not eligible for dividends.**

**To obtain information or make a complaint, contact**
**Security Life of Denver Insurance Company**

Customer Service Center
P. O. Box 5065
Minot, ND 58702-5065

Toll Free Number:  1(877) 253-5050

# SECURITY LIFE OF DENVER INSURANCE COMPANY
A Stock Company

1165-FL-8/03

V0001165FL25

CONFIDENTIAL

ATLES_SLD000145