# EXHIBIT Y

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HELEN HANKS, on behalf of herself and all others similarly situated,<br><br>                Plaintiff,<br><br>   vs.<br><br>THE LINCOLN LIFE & ANNUITY COMPANY OF NEW YORK and VOYA RETIREMENT INSURANCE AND ANNUITY COMPANY, formerly known as Aetna Life Insurance and Annuity Company,<br><br>                Defendants. | Case No.:  16-CV-6399 (PKC) |

### **EXPERT REPORT OF TIMOTHY C. PFEIFER**

May 1, 2018

CONTAINS CONFIDENTIAL MATERIAL COVERED BY PROTECTIVE ORDER

this type of indemnity reinsurance transaction.[22] Such standards closely adhered to the requirements for redetermination of non-guaranteed elements defined under ASOP 2. VRIAC's Board ultimately approved Lincoln's recommendation. As described above, VRIAC's review was responsible and diligent, entailing multiple meetings (internal and with Lincoln) and exchanges of data.

50. The COI rate increases were also discussed with certain state insurance departments prior to implementation in certain states (*e.g.,* Indiana, Connecticut, and New York). Ultimately, VRIAC and Lincoln could not come to agreement with the New York Department of Financial Services (NY DFS) on the increase. This is not unusual, as New York's interpretations of non-guaranteed elements changes substantially depart from those of other states. For example, NY DFS took the position that New York Insurance Law § 4224(a)(1) mandates that any redetermination use multiple classes (as opposed to allowing a cohort of all policyholders of a certain product to constitute a redetermination class) and that each of those sub-classes be treated differently.[23] NY DFS also suggested that § 4232(b) prohibits an insurer from considering reinsurance in a redetermination.[24] Accordingly, the COI rate increases have been postponed in the State of New York, but have been implemented in all other states (including VRIAC's state of domicile) at the identical COI rate increase levels, effective on policy month anniversaries after June 1, 2016.

### IV. THE COI INCREASE WAS IMPLEMENTED ON A CLASS BASIS

51. ASOP 2 (Section 3.4) addresses the issue of policy classes. It permits the actuary wide discretion in defining "class" for purposes of determination or redetermination of non-guaranteed elements. It does not require that the definition of "class" for purposes of

---

[22] LN_HANKS00328685.
[23] LN_HANKS00001774.
[24] LN_HANKS00001780.

redetermination of NGEs be identical to "premium class," "risk class" or other terms that may be used in a policy form to categorize an insured.

52. ASOP 2 indicates that the actuary *may* (not must) explicitly define "class" for (re)determination purposes in its Determination Policy. If such an explicit definition is not provided in the Determination Policy, the actuary is expected to develop the definition of "class" considering elements such as:

- Similarity of policy types;
- Structure of policy factors and non-guaranteed charges or benefits;
- Similarity of anticipated experience factors;
- Time period over which policies were issued; and
- Underwriting and marketing of the policies.

53. Further, the actuary may consider combining policy classes that are consistent with the above criteria, if appropriate.

54. In the above criteria, it should be noted that the third element "similarity of anticipated experience factors" is not intended to suggest that anticipated experience factors must be identical in defining a class. A male and a female insured may have different anticipated mortality experience, but may be considered part of the same redetermination class because of the same policy type, underwriting, distribution source, generation of policy issue, and structure of NGEs.

55. The redetermination class is the cohort of policyholders who will be subject to a change in non-guaranteed elements. That cohort can be, but need not be, defined using parameters such as smoking status, age, duration, or face amount. The selection of the redetermination class must not be arbitrary, should be based on changes in future expectations,

of the $500 million in recapture fee is associated with each policy form in the Aetna COI block,[89] Lincoln's approach is appropriate on its own merit. Changes to non-guaranteed elements, such as COIs, are to be based upon future anticipated cost factors, not past experience or transactions. Although the policy language in the Aetna contracts does not specifically address recouping losses or distributing gains, it is axiomatic that future COI changes should be based on future anticipated experience, not past experience or events such as receipt of recapture fees.[90] Contrary to Mr. Hause's commentary, ignoring past recapture fees is not highly unusual, and in fact, has been treated identically in other COI rate changes by other insurers.

145.   Lincoln's decision to recapture the policies from Swiss Re instead of accepting the large increase in reinsurance rates demanded was reasonable. It would have been worse for policyholders if Lincoln had accepted the YRT rate increase, as doing so would have justified an even larger COI Increase as estimates for that cost factor would have deteriorated even further.[91]

146.   ASOP 2 defines an "Anticipated Experience Factor" as an assumption that reflects anticipated experience and may be used to determine non-guaranteed charges or benefits.

---

[89] My understanding is that approximately two-thirds of the $500 million recapture fee was attributable to the ILX 95 transaction between Lincoln and Swiss Re. The ILX 95 transaction is not related to the mortality experience of the Aetna policies, but rather is related to a reserve financing that had large capital implications for Swiss Re. The remaining one-third was attributable to the reinsurance recapture. (Discussion with Darrel Tedrow, April 23, 2018.) Of that amount, the policies within the relevant product lines represent at most 10% of the face amount of the fully recaptured and partially recaptured policies. (Discussion with Amy Stankiewicz, May 1, 2018.) Thus, a conservative estimate of the dollar value of the $500 million recapture fee paid by Swiss Re to Lincoln attributable to the Aetna policies is approximately $16.7 million.

[90] While the policy language does not prohibit Aetna from recouping past losses, I have seen no evidence and Plaintiff cites none that past losses had been recouped. Had Defendants considered past losses and gains, past losses on this underperforming block of business would almost certainly have overwhelmed past gains, leading to an even larger COI increase than the one that was actually implemented.

[91] Burns Deposition Tr. 55:9-20.

Clearly, reinsurance costs and related experience meets this definition and thus reinsurance treatment should be considered as part of future NGE redeterminations.

147. In the NY DFS review of the proposed COI changes, New York regulators expressed concern about Lincoln's inclusion of YRT reinsurance in both the Purchase Assumptions and the current best estimate assumptions. In my opinion, no New York regulation authorized the NY DFS regulators to object to inclusion of YRT reinsurance in 2016, at the time of the NY DFS review. The recently enacted Regulation 210 explicitly includes language concerning the reflection of YRT reinsurance in the redetermination of non-guaranteed elements, but this regulation only went into effect in March, 2018. This explicit reflection in Regulation 210 highlights the fact that no prior written standard existed in the state of New York. Further, I am not aware of any so-called New York "desk drawer rules" that applied to the situation in which insurers included reinsurance parameters in the course of COI redetermination. I am also not aware of New York's regulatory position in the event that the inclusion of reinsurance costs in the analysis would <u>lower</u> the amount of a COI increase. To summarize, it is astonishing and inconsistent that a state with New York's focus on insurance company stability and solvency would deny an insurer the ability to reflect an actuarially supportable expense factor like reinsurance in non-guaranteed element redeterminations.

148. Mr. Hause also states that Defendants' reinsurance costs are not "reinsurance" from the policyholder's perspective because it was Lincoln who entered into reinsurance arrangements on these policies with other reinsurers.[92] I disagree. Mr. Hause does not (and cannot) dispute that the reinsurance costs at issue are the costs of reinsuring the subject policies. He appears to quibble only on a semantic-level, arguing that "the 'reinsurance costs' are actually

---

[92] Hause Report ¶ 86.

Respectfully submitted,

Timothy C. Pfeifer

May 1, 2018

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER    74