# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action 1:18-CV-01897-DDD-SKC

PHT Holding I LLC,
on behalf of itself and all others similarly
situated,

        Plaintiff,

v.

SECURITY LIFE OF DENVER INSURANCE
COMPANY,

        Defendant.

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# INTRODUCTION

After four-and-a-half years of hard-fought litigation, Plaintiff obtained a phenomenal settlement less than 36 hours before trial. The Settlement, which the Court preliminarily approved in April, provides the following benefits to the Class:[1]

- **CASH:** A $30 million cash payment. This is not a claims-made settlement. Checks will be mailed directly to class members and settlement funds do not revert to SLD.

- **COI RATE SCHEDULE INCREASE FREEZE**: A prohibition on any new cost of insurance ("COI") scale increase for five years.

- **VALIDITY STIPULATION AND STOLI WAIVER**: An agreement by SLD not to challenge the validity and enforceability of policies on the grounds of lack of an insurable interest, stranger originated life insurance ("STOLI"), or misrepresentation.

The cash alone is exceptional: It represents approximately 50% of Plaintiff's maximum damages model and approximately 87% of an alternative model Plaintiff intended to present at trial. It thus provides a far better recovery than another COI settlement that a court recently described as "quite extraordinary." *See 37 Besen Parkway, LLC v. John Hancock Life Ins. Co.*, 15-cv-9924 (PGG), Dkt. 164 at 20:10 (S.D.N.Y. Mar. 18, 2019) ("*Hancock COI*") (approving COI settlement with cash fund of 42% of overcharges and no quantified non-monetary benefits). And the non-cash component adds even more value and provides benefits the Class could not have obtained even with a trial victory. These results are extraordinary in light of the risks of the case at trial and on appeal, including SLD's argument that the Class suffered essentially no damages.

Plaintiff was able to achieve these extraordinary results only by litigating to the brink of trial and obtaining key pretrial victories that greatly enhanced the value of the case in Defendant's eyes. The Settlement was reached within days of Plaintiff receiving favorable jury instructions

---

[1] Unless otherwise noted, capitalized terms mean the same as in the Settlement Agreement (Dkt. 224-3).

1

regarding *contra proferentem* and denials of SLD's motions to decertify the class and strike Plaintiff's damages model. 2/9 Tr. at 3:10, 3:25-4:3, 5:3-5; Dkt. 219-2 at 18-19. To even get to that point, considerable ingenuity and perseverance of counsel was required, including by submitting a multi-state survey of laws on contract interpretation and extrinsic evidence, and proposing a simplified grouping of those laws that proved the case was manageable as a class action. Dkt. 141 at 19 (praising Plaintiff for having "done its homework"). This result is even more impressive considering that the Court found that the COI provision in this case has less "restrictive language" than that found in other similar cases, which "gives Security Life substantial discretion to set cost-of-insurance rates." *Id.* at 7, 10.

The unanimously positive reaction from the Class supports the strength of the Settlement. In preliminarily approving the Settlement, the Court found that it would likely be able to grant final approval under Rule 23(e)(2). Dkt. 225 ¶ 2. Since then, Plaintiff provided notice of the Settlement to the Class in compliance with the extensive notice plan the Court approved, which included direct mailing to the Class Members' addresses in SLD's files. Id. ¶ 7. The deadline to object to the Settlement has now passed and **not a single Class Member objected.** The Class's reaction underscores that the Settlement is fair, reasonable, and adequate under Federal Rule 23(e)(2). Plaintiff respectfully requests that the Court grant final approval.

## BACKGROUND

**I.     The Litigation**

In 2015, SLD raised COI rates on two universal life insurance products: Strategic Accumulator Universal Life (SAUL) and Life Design Guaranteed Universal Life (LDGUL). Plaintiff sued in July 2018 to challenge that rate hike.[2]

---

[2] Advance Trust & Life Escrow Services, LTA initially filed the action. The Court later substituted PHT Holding I LLC as Plaintiff and Class Representative. Dkt. 205.

Class Counsel obtained and analyzed over 80,000 pages of documents, including over 1,000 spreadsheets and many technical actuarial tables and memoranda; worked with liability and damages experts; issued 13 third-party subpoenas to SLD's reinsurers and actuarial advisors; and took and defended 15 technical depositions. *See* March 31, 2023 Declaration of Steven G. Sklaver ("Sklaver Decl.") (Dkt. 224-1) ¶ 9. Class Counsel's efforts included discovery concerning the non-uniformity of the COI Increase at issue for trial—the fact of which was not apparent from any public information. *Id.* ¶ 15.

The Court initially denied Plaintiff's motion for class certification without prejudice. Dkt. 81. The Court asked whether different state rules regarding the "role of extrinsic evidence in interpreting" form contracts "would be manageable." *Id.* at 15-16. When Plaintiff filed its renewed motion, it provided over 50 pages of surveys marshaling the law across the nearly nationwide class on state rules of contract interpretation and synthesized that law into a manageable approach for trial. Dkt. 87. Concluding that Plaintiff had "done its homework," the Court certified the Class. Dkt. 141 at 19. Simultaneously, the Court granted and denied in part SLD's summary judgment motion, dismissing certain theories but holding that triable issues remained with respect to the "uniformity" theory. Dkt. 141.

Following class certification, the Court approved the proposed notice plan and Class Members were notified and given a 45-day window to opt out. Dkt. 148, Dkt. 142-1 ¶ 15. No Class Member opted out. March 31, 2023 Declaration of Gina Intrepido-Bowden ("Intrepido-Bowden Preliminary Approval Decl.") (Dkt. 224-7) ¶ 15.

The Court set the trial for February 13, 2023 and the parties prepared intensely for it, including readying trial examinations, deposition designations, exhibit lists, witness lists, stipulations, jury instructions, and verdict forms. Sklaver Decl. ¶ 17; Dkt. 161. Each party filed a

3

trial brief and briefed nine motions *in limine*, including one SLD filed to exclude Plaintiff's damages model. Dkts. 168, 170, 183, 186, 187, 193; Sklaver Decl. ¶ 17. Before this, on October 12, 2022, Plaintiff conducted a mock trial in Denver, involving dozens of local residents acting as jurors. *Id.* ¶ 8. Following the pretrial conference, the Court ordered supplemental briefing on how the jury should be instructed on *contra proferentem*. Dkt. 199. Within days, Plaintiff filed 56 pages of briefing on the issue. Dkts. 203, 206. Then, with trial six days away, SLD moved to decertify the class. Dkt. 208. The Court asked for briefing on another question regarding class certification. Dkt. 211. Plaintiff filed a 15-page response. Dkt. 212. On February 9, the Court announced it would deny SLD's motions to decertify the class and exclude Plaintiff's damages model, and issued rulings on jury instructions. 2/9 Tr. at 3:10, 3:25-4:3, 5:3-5; Dkt. 219-2 at 18-19.

**II.     Settlement Negotiations**

The parties executed a term sheet with trial less than 36 hours away. Sklaver Decl. ¶¶ 5-6. The negotiations that led to that Settlement were arm's length. Throughout the case, the parties exchanged numerous offers and counteroffers and engaged in a good faith, though ultimately unsuccessful, mediation with Retired Chief U.S. Magistrate Judge Arthur Boylan. *Id.* ¶ 7. Following the February 9, 2023 conference, with virtually all pre-trial issues resolved, while preparing for the fast-approaching trial, and at the direction of the Court, counsel met to discuss settlement and thereafter negotiated a settlement over the subsequent two days, including an in-person meeting, which led to a term sheet. *Id.* A long-form settlement agreement was negotiated and agreed to thereafter. *Id.* ¶¶ 5-6.

**III.    The Settlement**

    **A.     Consideration and Class**

4

SLD will fund a $30 million cash Settlement Fund. Dkt. 224-3 ("Settlement Agreement") § 2.1. No portion will revert to SLD. *Id.* § 2.8. The Settlement also provides two forms of non-cash relief. *First*, SLD will not increase the COI rate schedules on the Class Members' policies above the schedule imposed in 2015 at any time prior to March 31, 2028. *Id.* § 3.1. *Second*, SLD will not challenge the validity or enforceability of any class policies on the grounds of lack of an insurable interest, STOLI, or misrepresentation. *Id.* § 3.2. A highly qualified expert with extensive insurance experience has opined that the non-monetary relief is worth an additional $5,740,057 to the Class. See Dkt. 228 ¶ 11.

The Class is the class the Court already certified: "[a]ll owners of [SAUL] . . . policies subjected to [SLD's COI] rate increase announced in September 2015, excluding owners whose policies issued in Alaska, Arkansas, New Mexico, Virginia, and Washington, and SLD, its officers and directors, members of their immediate families, and their heirs, successors, or assigns." Settlement Agreement § 1.4.

### B. The Release

The Class will release SLD from "all SAUL Claims asserted in the Action or arising out of the facts, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act that were alleged or could have been alleged in the Action related to the COI Rate Increase." Settlement Agreement § 1.36. The release excludes, among other things, claims that arise from a future COI rate schedule increase, claims to enforce a death benefit, and claims arising out of the COI Rate Increase imposed on the LDGUL policies. *Id.* § 1.17. The parties agreed to propose a final judgment that expressly preserves Plaintiff's right to pursue an appeal of the dismissal of claims arising out the COI Rate Increase imposed on the LDGUL policies. *Id*. § 4.7.

### IV. Preliminary Approval, Notice, and Distribution Plan

5

On April 18, 2023, the Court preliminarily approved the Settlement and the notice plan. Dkt. 225. Per the notice plan, JND mailed a short-form notice via first-class mail to the Class Members' addresses in SLD's files on May 18, 2023. Intrepido-Bowden Final Approval Decl. ¶ 5; *id.*, Ex. A. JND also posted a copy of a long-form notice to the class website, as well as a copy of Class Counsel's motion for attorney's fees and reimbursement of litigation expenses the day it was filed, June 16, 2023. *Id.* ¶ 10. In both the short- and long-form notices, Class Members were notified of their right to object and the deadline for doing so, which was July 3, 2023. *Id.* ¶ 13; *see also id.*, Exs. A, B. That deadline passed with zero objections to either the Settlement or Class Counsel's request for fees and expenses. *Id.*

The proposed plan of allocation, which the Court preliminarily approved and was described in the class notices, distributes proceeds directly to Class Members on a *pro rata* basis after a minimum settlement payment is made. Dkt. 224-6 ("Plan of Allocation") ¶¶ 1–3; *see also* Dkt. 225 ¶ 4. Each recipient's share of the Net Settlement Fund will be its share of the total COI overcharges reflected in the Supplemental Report of Robert Mills—*i.e.*, the difference between the COI charges assessed on the policy since the 2015 COI increase and the COI charges that would have been assessed but for the 2015 COI increase. Sklaver Decl. ¶ 29.

SLD will fund the Settlement Fund Account within 35 days after this Court enters its Order and Judgment finally approving the Settlement, assuming no appeals. *See* Settlement Agreement §§ 1.22, 2.1, 2.4. Checks will be mailed within 30 days of SLD funding the Settlement Fund Account. Intrepido-Bowden Final Approval Decl. ¶ 15. Per the allocation plan, each recipient will receive its check in the mail automatically, without needing to complete a form. Plan of Allocation ¶ 1. Within one year plus 30 days of JND mailing settlement checks, JND will distribute any remaining funds on a *pro rata* basis to Class Members who cashed their checks in the first

6

distribution, subject to the feasibility of mailing such additional checks. *Id.* ¶ 5. If there are remaining funds, a motion will be filed to this Court to direct the final disposition of those funds.

## ARGUMENT

### I.     The Settlement Warrants Final Approval

#### A.     Legal Standard

Final approval is appropriate when the Court determines that a class action settlement is "fair, reasonable, and adequate after considering whether" a variety of factors are satisfied, discussed in detail below. Fed. R. Civ. P. 23(e)(2). These factors, introduced to Rule 23 in 2018, "are not intended to displace the considerations that the Circuits apply to assess proposed settlements." *O'Dowd v. Anthem, Inc.*, 2019 WL 4279123, at *12 (D. Colo. Sept. 9, 2019). Instead, they "'focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Id.* (quoting Rule 23, 2018 Advisory Note, Subdivision (e)(2)); *see Rutter & Wilbanks Corp. v. Shell Oil*, 314 F.3d 1180, 1186 (10th Cir. 2002). "The presumption in favor of voluntary settlement agreements is especially strong in class actions." *O'Dowd*, 2019 WL 4279123, at *12.

In granting preliminarily approval under Rule 23(e)(1), the Court held that the Settlement is likely to meet to meet this standard. Dkt. 225 ¶ 2 ("[T]he Court finds that it will likely be able to approve the Settlement under Rule 23(e)(2), and therefore preliminarily approves the Settlement . . . as being fair, reasonable and adequate to the Settlement Class based on the relevant factors under Rule 23(e)(2) and [*Shell Oil*].")

7

### B. The Settlement Satisfies Rule 23(e)(2)

#### 1. The Class Representative and Class Counsel Have Adequately Represented the Class

Adequacy involves "two questions": whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the named plaintiffs and their counsel" have "prosecute[d] the action vigorously on behalf of the class." *Shell Oil*, 314 F.3d at 1187–88).

The Court already held that the class representative and Class Counsel adequately represent the Class. Dkt. 205; Dkt. 141 at 22-23. Plaintiff and Class Counsel vigorously litigated this case to the brink of trial. No conflicts exist between Plaintiff and the Class, as proceeds will be distributed on a *pro rata* basis after a minimum settlement payment is made. All Class Members share an overriding interest in obtaining the largest monetary recovery possible. *See Paulson v. McKowen,* 2022 WL 168708, at *6-7 (D. Colo. Jan. 19, 2022) (class representative adequate where plaintiff and class members "share the same interest in maximizing their recovery from defendants").

#### 2. The Parties Negotiated at Arm's Length

Rule 23(e)(2)(B) requires that "the proposal was negotiated at arm's length." Where a settlement has "resulted from arm's length negotiations between experienced counsel after significant discovery had occurred," a court "may presume the settlement to be fair, adequate, and reasonable." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). The Court already found that "th[is] Agreement was entered into at arm's length by highly experienced counsel." Dkt. 225 ¶ 3.

#### 3. The Relief Is Adequate

##### i) *Costs, Risks, and Delay of Trial and Appeal*

8

To assess the adequacy of relief under Rule 23(e)(2)(C)(i), "courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." Rule 23, 2018 Advisory Note, ¶¶ (C) & (D).

Here, substantial risks existed as to both liability and damages. At issue were technical actuarial disputes that the jury could have decided either way. Plaintiffs' proof relied on expert evidence that Defendant's expert controverted and the jury might not have accepted. *See Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *9 (S.D.N.Y. Sept. 9, 2015) (competing expert opinions concerning actuarial concepts in COI case made it "unclear how a jury would decide these disputed issues at trial"); *In re Bear Stearns*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured."). Moreover, the Court permitted SLD to argue to the jury that the proper measure of damages would be, at most, "the delta between what COI rates were and what they would have been had the rate increase been spread uniformly." Dkt. 170 at 4. If the jury accepted that argument, it would have wiped out virtually all of the Class's damages. The risk of zero recovery or recovery of far less than what Plaintiff sought was a real risk and is exactly what policyowners suffered in a recent COI class action jury trial. *See, e.g.*, Savage Decl. ¶¶ 3–5 & Exs. 1–3 (verdict in recent COI class action trial, *Meek v. Kansas City Life Ins. Co.*, 19-cv-472, Dkt. 311, 329–30 (W.D. Mo. May 25 & June 20, 2023), where the Class sought $18 million but recovered only $5 million from the jury (i.e., less than one-third of the alleged overcharges), which was reduced further to less than $1 million (*i.e.*, less than 6%) after partial post-trial decertification). Even if Plaintiff prevailed at trial and the Class was awarded substantial damages, the case likely would have been tied up in years of post-trial briefing and appellate practice. *See Fleisher*, 2015 WL 10847814, at *6.

9

### ii) *Proposed Method of Distributing Relief*

The second Rule 23(e)(2)(C) subfactor considers "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). Under this subfactor, the court examines whether the claims processing method "facilitates filing legitimate claims" and "whether the claims process is unduly demanding." *Montgomery v. Cont'l Intermodal Grp.*, 2021 WL 1339305, at *6 (D.N.M. Apr. 9, 2021). Plaintiff's proposed distribution plan requires nothing of the Class Members. The Class Members are identified from SLD's records and each member is mailed a check automatically. *See* Sklaver Decl. ¶ 29; Intrepido-Bowden Preliminary Approval Decl. ¶ 32; *see also* Dkt. 225 ¶ 4 ("The Court finds that the proposed plan of allocation . . . is sufficiently fair and reasonable that notice of the distribution plan should be given[.]")

### iii) *Proposed Award of Attorneys' Fees*

The third Rule 23(e)(2)(C) subfactor considers "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Class Counsel moved for attorneys' fees of $10 million, which represents approximately 28% of the Settlement's total gross benefits and a lodestar multiplier of just 1.3x, a multiplier that will only decrease due to work required to administer the Settlement. Dkt. 228. As Class Counsel explained in its motion, that requested award is well within the range approved by courts in this Circuit. *See id.* JND posted Class Counsel's fee application to the class website the day it was filed, June 16, with more than two weeks left in the objection period. Intrepido-Bowden Final Approval Decl. ¶ 10. No class member objected to Class Counsel's fee request. *Id.*

### iv) *Agreements Required to Be Identified*

The final subfactor, Rule 23(e)(2)(C)(iv), considers "any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(3) requires the "parties seeking approval" to "file a

10

statement identifying any agreement made in connection with the proposal." There are no agreements beyond the Settlement Agreement.

### v)   *The Relief*

The $30 million cash component of the Settlement alone is an extraordinary recovery given the risks faced at trial on both damages and liability. Liability would have been a battle of the experts, and SLD advanced numerous arguments that would have dramatically reduced, if not eliminated, the Class's damages. Plaintiff's *maximum* damages model, which set damages as the total classwide COI overcharges, equaled $59,420,913. Sklaver Decl. ¶ 23. Plaintiff's alternative model calculated damages as $34,441,536. *Id.* Defendant's argument that damages at most were "the delta between what COI rates were and what they would have been had the rate increase been spread uniformly" would have resulted in damages that were substantially less. Given the risks the class faced, a $30 million cash fund—over 50% of the maximum damages model and approximately 87% of the alternative damages model—is a phenomenal result.

The non-monetary benefits make the relief even more exceptional. The COI freeze gives Class Members certainty on what their COI obligations will be through ***March 2028***, 13 years after the COI increase at issue. Thus, the Class is protected from further COI increases, such as those that other carriers have recently announced in the wake of COVID. Sklaver Decl. ¶ 27. The validity agreement also substantially benefits the class as SLD is giving up its right to challenge the validity of policies, thereby helping ensure that the death benefits otherwise owed to the Class Members will be paid.

In approving a COI class action settlement, the Southern District of New York described a settlement that provided for a cash fund equal to 42% of overcharges, with no quantified non-monetary benefits, as "quite extraordinary." *Hancock COI*, Dkt. 164 at 20:10. This Settlement provides far better cash relief, plus substantial non-monetary benefits on top. When compared to

other class actions, the Settlement is even more favorable. For example, when granting final approval and awarding a 33% fee in *Voulgaris v. Array Biopharma Inc.*, 2021 WL 6331178 (D. Colo. Dec. 3, 2021), *aff'd*, 60 F.4th 1259 (10th Cir. 2023), the court explained that the settlement— which provided the class between 25% and 35% of total recoverable damages—"dwarf[ed] the median class action settlement for similar cases in the Tenth Circuit." 2021 WL 6331178, at *6. The median percentage for securities class actions with damages between $25 million and $74 million, this Court recounted, was 7.6%, *id.*, further establishing that this Settlement that provides **50%** of the total recoverable damages and **87%** of the class's alternative damages model is extraordinary. *See also Marshall v. Northrop Grumman Corp.,* 2020 WL 5668935, at *2, *12 (C.D. Cal. Sept. 18, 2020) (concluding that settlement for "approximately 29% of Plaintiffs' claimed damages" was "an exceptional result," awarding 33% fee, and collecting seven cases where approved settlement funds were less than 29% of recovery).

### 4. The Proposal Treats All Class Members Equitably

The final Rule 23(e)(2)(D) factor focuses on equitable treatment of class members, which is easily satisfied because the proposed plan of allocation distributes settlement proceeds on a *pro rata* basis using each class member's share of the total damages after a minimum settlement is made to all Class Members. Sklaver Decl. ¶ 29; *O'Dowd*, 2019 WL 4279123, at *14 (finding that a "Plan of Allocation [that] provides for distribution to Settlement Class Members based on a pro rata calculation that applies to every member" satisfies the equitability factor); Dkt. 225 ¶ 4. The releases are also equitable as they treat all Class Members equally and do not affect apportionment of damages.

### 5. Class Counsel Believes the Settlement Is Fair and Reasonable

The Tenth Circuit has identified an additional factor that does not directly overlap with the Rule 23(e)(2) factors: "the judgment of the parties that the settlement is fair and reasonable." *Shell*

12

*Oil*, 314 F.3d at 1188. Under this factor, "the recommendation of a settlement by experienced plaintiffs counsel is entitled to great weight." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 288-89 (D. Colo. 1997). Class Counsel has extensive experience in complex class actions, including nearly a dozen COI cases, and it is Class Counsel's unequivocal opinion that this settlement is fair, reasonable, and adequate. Sklaver Decl. ¶¶ 3-4, 32.

The reaction of the Class Members further supports approval. JND mailed 353 Class Notices to the addresses maintained in SLD's records, with subsequent follow-ups for address updates. Intrepido-Bowden Final Approval Decl. ¶¶ 5–6. That direct mail notice effort reached 96% of Class Members. *Id.* ¶ 7. JND also established a public website, which hosts important case documents (including the Class Notices and Class Counsel's motion for attorney's fees), answers frequently asked questions, and provides important information about Settlement deadlines and options. *Id.* ¶ 18–19. Class Members were provided a toll-free hotline with live support to contact JND. *Id.* ¶ 11.

As mentioned, not a single Class Member objected. *Id.* ¶ 14. "[T]he absence of objectants may itself be taken as evidencing the fairness of a settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997)); *see Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1008 (D. Colo. 2014) ("The Court may also consider the fact that no objections were filed by any Class Members.").

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court grant final approval to the Settlement; approve the notice program as complying with Federal Rule 23 and due process; approve the plan of distribution as fair, reasonable, and adequate; and enter final judgment.

Dated: July 17, 2023

/s/ *Steven G. Sklaver*
Paul H. Schwartz
SHOEMAKER GHISELLI + SCHWARTZ LLC
1811 Pearl Street
Boulder, Colorado 80302
Telephone: 303-530-3452
pschwartz@sgslitigation.com
jhelfgott@sgslitigation.com

Seth Ard
Ryan C. Kirkpatrick
Zach Savage
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019-6023
Telelephone: 212-336-8330
sard@susmangodfrey.com
rkirkpatrick@susmangodfrey.com
zsavage@susmangodfrey.com

Steven G. Sklaver
Michael Gervais
Lora Krsulich
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: 310-789-3100
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com
lkrsulich@susmangodfrey.com

*Counsel for Plaintiff and the Class*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

/s/ Zachary B. Savage

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2023, a true and correct copy of the foregoing document was served on all parties of record via the Court's CM-ECF system.

*/s/ Zachary B. Savage*

16